JUDGE ROBERTSON
delivered the opinion op the court:
In this action by the appellant against the appellee on a policy of insurance, the court below instructed the jury to find for the appellee, and, on such finding, rendered judgment in bar of the action.
The policy, issued on the 21st of July, 1866, for an advanced premium of one hundred dollars, insured for one year, to the amount of five thousand dollars, goods in a brick house in the city of Vicksburg.
Among other stipulations, the policy contained the following, in substance and effect:
1. That in the event of loss by fire, immediate notice thereof should be given to the insurer; and, as soon thereafter as possible, the fact of loss by fire, and an assessment of the value of the goods consumed or damaged, authenticated by the owner’s affidavit and a magistrate’s certificate of his credibility, should be furnished to the company or its local agent before any action could be maintained for failing to pay the damage.
2. That the underwriters might at any time, on notice, cancel the policy. v
3. That if the same property had been or should be insured by any other company, without an indorsement thereof on the appellee’s policy, its guaranty should be “ void.”
It appeared on the trial that there were two other assurances of the same property — -one by the “Home Insurance,” indorsed on the appellee’s policy, and the other by the “London, Liverpool, and Globe Insurance Company,” unindorsed, and, so far as must be presumed, unknown to the appellee or its agent until he was notified of it after the fire.
It appeared also that the goods were burned on the 23d of December, 1866; that, on the 25th of the same *245 month, arbitrators, chosen by the appellant and the agent of the Home company, and the local agent of the appellee, assessed the damage; that on the 11th of February, 1867, the appellee’s agent refunded to the appellant forty-one dollars for the unexpired term, and that, thereupon, the policy was canceled; and the petition alleges that the two other companies had paid two thirds of the assessed loss.
It does not appear that the preliminary evidence prescribed in the policy was fully presented to the appellee’s agent, but his conduct constructively waived a precise fulfillment of that requisition; and the only question worthy of grave consideration is, whether, under all the circumstances, the policy has been avoided, either by the unindorsed insurance or by the indorsed cancellation.
As, according to the provisions of this and other modern policies of insurance against fire, each of several insurers of the same property is proportionately contributory to the indemnity of the owner, three insurances in this case might seem, in one aspect, to he beneficial to the appellee by reducing its liability. But, in a more important phase, the interest of the company and public policy require the enforcement of the forfeiture for failing to notify its agent of the insurance, which was never indorsed as approved by the appellee. The object of that condition was to assure the underwriter against over insurance or insurance equivalent to the entire risk, whereby the insured, relieved of all risk, might be tempted to procure the loss, or to take no care to prevent it. To make it the interest of the insured as well as of the insurer to avert loss, no prudent underwriter ever insures for the full value of the property, but leaves the owner so far interested in preventing the loss as to assure his fidelity and vigilance in proper care to avert *246 it. And cumulative insurances against the same risk may frustrate this provident aim, encourage fraud, and thus tend to discourage insurances and augment the percentage of premiums; and, as capital and enterprise are aided by fair and responsible insurances, the whole community is interested in the prevention of fraud by either party to a policy and the reduction of the rate of premiums; and, consequently, some such precautionary provision as that we are now considering is usual in American fire policies, and should be regarded and upheld by the judiciary as all other reasonable and proper stipulations in ordinary contracts.
But the term “void,” in its technical sense, imports more than the parties intended. To apply it technically would make it null as to both parties, and, therefore, suicidal. Void and voidable, essentially different in object and effect, are too often used indiscriminately; and it is demonstrable that in this case “void” was intended to mean voidable, or to be treated as void by the insurer at his own exclusive option, and not an absolute nullity as to either party in all events; and, therefore, the insurer might, by contract or conduct, waive the right to exoneration and become estopped from enforcing the conventional condition of forfeiture. And the able counsel/or the appellant insist that the appellee has done so, by l receiving from the other two insuring companies two \ thirds of the loss, by co-operating in the assessment, \and by refunding a portion of the premium. But this court cannot concur in this conclusion. The appellee was no party to the arrangement, whereby two thirds were accepted from the other companies, and cannot therefore be affected by any implication suggested by it as between the only parties to it.
*247 The assessment cannot be construed as more than a prelude to the ulterior decision, by the appellee, to pay oy not to pay, on full knowledge of all the preliminary facts, when satisfactorily presented to it for its consideration. The simple assent to the appraisement could not consistently imply a waiver of forfeiture, and especially as the ground of it was not then known to the appellant. Nor can we perceive how a return of a portion of the premium, and a cancellation of the policy, could be rationally interpreted as an acknowledgment of the appellee’s continuing obligation to pay for the loss. This transaction seems to import a compromise, and a renunciation of liability ; and, after the acceptance of forty-one dollars, and a surrender and cancelment of the policy, we do not see how the appellant could maintain an action on it, as if still alive and undischarged. The agent who made this compromise had authority to do so, for his power was then suspended only as to future risks; but if he had no authority to act as he did, his act can furnish no evidence against his constituent of a waiver of any of its rights, but rather proves the contrary.
The uncontradicted and uncontroved facts left to the jury no fact to try, and the court had the right to announce the deduction of law, which, according to the foregoing view, it did correctly.
Wherefore, though peremptory instructions are hazardous, and often indiscreet, yet, as that given in this case was right, and did not encroach on the legal province of the jury, the judgment is affirmed.