### National Live Stock Insurance Company v. Jackson.

(Decided October 13, 1914.)

Appeal from Carroll Circuit Court.

1.  Insurance—Insurance of Horse—Action for Loss of—Mortgage.—
    In an action on live stock insurance policy for death of horse, it

is not sufficient defense to say the policy was voided because insured mortgaged horse without written consent of insurer endorsed on the policy, when the policy required no such endorsement, and the company did consent by a letter written to its agent which was delivered to insured.

2. Insurance—Acts of Agent—When Company Bound by.—The policy of law is to hold the insurer bound by the acts and conduct of the local agent whenever it is not clear that the insured knew of limitation on the agent's power.

3. Insurance—Action for Death of Horse—Pleading—Evidence.— Where the insured testified without objection that the horse got sick and died, this is sufficient proof of death by disease. There is no merit in the contention that the petition is defective because it does not aver that the cause of death is from disease or other cause enumerated in the petition.

G. A. DONALDSON and MITCHELL S. MEYBURG for appellant.

WINSLOW & HOWE for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

On September 18th, 1911, the appellant, Live Stock Insurance Company, delivered to appellee, Jackson, a policy of insurance on his stallion named "Forest Squirrel, Jr." The policy was dated September 1st, 1911, and insured Jackson "against loss by death or theft to the amount of $600," on the stallion named.

By another clause in the policy, the term of insurance is fixed for one year, and it is further stipulated that the property is insured "against loss by death caused by accident or disease (fire, lightning or cyclone), theft or by reason of a broken leg when found necessary by attending veterinarian to destroy the animal's life." On the night of August 13th, 1912, about 9 o'clock, the horse got "sick" and died in about an hour. A veterinary was sent for and being unable to come, the services of the "family physician" were secured. Jackson, as a witness, was then asked if he knew the cause of death and replied, "Well, no, sir." The company refused to pay the loss, and Jackson sued to recover the sum of $600. On trial of the case, the jury returned a verdict for $600, and judgment was entered accordingly. From that judgment, this appeal was taken. Most of the questions raised on the appeal center around the main one, and that is, whether the company consented, in writing, for Jackson to execute a mortgage on the stallion and, if not, whether the company knew that the mortgage had

been executed, and, with such knowledge, failed to exercise a right to cancel and thereby waived it.

The policy was issued upon Jackson's written application, and sent to appellant's agent, McGlasson, for delivery. Jackson got the policy on September 18th, and at that time told the agent that he would like to mortgage the animal for $200. The agent admits that he told appellee he thought it would be all right, and that he would write to the company in regard to it. Jackson swears the agent said, ''he knew it would be all right.''

The following facts are undisputed; McGlasson, the company's agent, at once wrote the company, ''Please let me know if it is satisfactory for Mr. Jackson to mortgage on his horse for $200.''

On September 22, four days after receipt of the policy, Jackson mortgaged the horse to Mr. Jett for $200. On September 26th, the company wrote to its agent as follows:

''In regard to the mortgage by Mr. Jackson. We will consent to this if you will send the policy to us for our endorsement, as without the endorsement in writing on the policy, the policy would be void in case of mortgage, so in order to protect your client, handle this matter as we suggest herein.''

McGlasson swears that he ''forwarded'' this letter to Jackson. Jackson says he received the letter, and sent it to the mortgagee, Jett, who held the policy as collateral. Jett got the letter, but for some reason failed to send in the policy to the company for endorsement as requested. Shortly afterwards, as Jackson swears, he saw McGlasson in person and told him he had mortgaged the horse and McGlasson remarked that he propably would not have been able to mortgage it had it not been for the insurance.

The policy contained this provision:

''This policy shall be void * * * if the within named stock shall be mortgaged at any time without notifying the company and receiving its written permission so to do.''

A few weeks afterwards Jackson's premium note fell due and he paid it to McGlasson, appellant's agent.

From the clause of the policy above quoted, it will be seen that only notice and written permission is necessary in case of mortgage. The company's letter to their agent, McGlasson, shows that notice was given, and that no objection was made. A condition was named not for

their benefit, but for insured's. This condition was that the policy be sent to them for endorsement. Such an endorsement was not required by the policy and the only reason for requiring it, as it seems to us, is to afford to the insured additional or positive evidence, in the event of contest, that written consent was given. The question is, whether written consent was given, and not whether there is as much evidence as the company desired that it had consented. Fairly construed, the letter of the company to McGlasson was a written consent to the mortgage. The fact that this letter imposed conditions to better secure Jackson's rights under the policy, does not put the company in a position to complain that he did not avail himself of all of them. In short, the position of the company is that Jackson's evidence of written consent is not as strong as the company desired to make it for him. We are unable to see in this position any matter of defense for the company after the loss had occurred. This is especially true in view of the fact that in a few weeks after the mortgage was executed and the letter written, Jackson notified, that is, told the agent that he had executed the mortgage. Assuming for the present that this was notice to the company, it was incumbent upon it to cancel the policy if not satisfied with the mortgage. It is too late after the lapse of many months, when the loss occurs, to deny liability for want, of notice.

While the agent, McGlasson, denies that Jackson told him that the mortgage was executed, yet we find after the loss occurred McGlasson writes to his company with reference to settlement and uses this language:

"Mr. Jackson states you wrote him that the company had never been notified in regard to placing a mortgage on this horse. I notified you and you gave permission to do so, but I learn the policy was never transferred to Mr. Jett."

The company insists that McGlasson was nothing more than a soliciting agent, without power to accept notice, or alter or modify the policy or any obligation of the company under it.

Another clause of the policy does provide that the company is not to be bound by any acts, agreements or statements of any agent not referred to or incorporated as such in this policy.

The policy, which was delivered to Jackson, was countersigned by McGlasson as agent, and his agency

contract in evidence imposes upon him other duties than
of a mere solicitor. He is to collect premiums, as he did
in this case, and it further provides:

"Said agents agree to be diligent, careful and to use
their best skill and judgment in selection of risks and in
promoting the interests of said company."

An objection to a mortgage is the same as that to
additional insurance—the risk is enhanced. And it is
the custom of insurance companies to require written
notice and consent in order to save the policy from for-
feiture. In discussing the question of notice of addi-
tional insurance—where the policy required written con-
sent and an endorsement on the policy, this court in the
case of Phoenix Insurance Company v. Spiers and
Thomas, 87 Ky., 292, said:

"The decided current of authority, however, is that
this waiver may arise from the act or conduct of the in-
surer; and silence for an unreasonable time upon his
part, after notice or knowledge of the breach of the con-
dition, will constitute such conduct.

If notice be given to the company of the additional
insurance or increased risk, and no objection be made
within a reasonable time, fairness and good faith should
estop it from insisting upon a forfeiture of the policy
because its consent was not indorsed upon it according
to its literal terms.

The assured has a right to infer therefrom that the
company will not insist upon it. It has not spoken as
to a matter for its benefit when it could and should have
done so to prevent another from being misled to his
probable injury. If it had done so, he might have pro-
tected himself probably by other insurance. Its silence
under such circumstances is a consent to the additional
insurance. A forfeiture upon this ground is not for
fraud. It may cancel the policy by reason of it, but if
it does so, it must refund a proper proportion of the
premium. It can not, therefore, remain mute with a
knowledge of the existence of a ground of forfeiture, and
if there be no loss retain the entire premium, but if
there be one, rely upon the breach of the contract.

The term "void," as used in the policy, is to be re-
garded as meaning that the insurer may, at his exclusive
option, treat it so, and not that the contract becomes an
absolute nullity as to either party. The insurer may,
therefore, by his conduct, waive his right of forfeiture

and estop himself from insisting upon it. Baer v. The Phoenix Insurance Company, 4 Bush, 242." * * *

There is evidence in the record tending to show that Curtis had notice of the additional insurance; the special verdict so finds; and it is claimed that this was notice to the company, and that its silence under these circumstances operated as a waiver of any right of forfeiture.

Upon the other hand, it is insisted that notice to him was not notice to it; and that no power of waiver existed in him, because the contract of insurance had been closed; because his powers were limited, and he then owed no duty to the assured.

If the latter knew that his powers were limited, and that he was invested with no power of waiver, or if there was anything connected with the transaction to put the assured upon inquiry, then any conduct of the agent in excess of his authority would not bind the company. Of course it limits his power; and if the assured knew it had done so, or as prudent men should have known it, then they dealt with him at their peril in matters in excess of his power.

The policy in this case contains no provision as to how or to whom notice of other insurance is to be given. If, however, the agent had apparent authority in the matter; if, under all the circumstances, he ostensibly had it; if his acts indicated general powers as to the subject of insurance for his company, then, although in fact his authority was limited, yet it should be considered adequate as to third parties, unless those dealing with him had express or inferential notice of the want of power." * * *

"The tendency of recent decisions, and we think properly, is to hold the insurer bound by the acts and conduct of the local agent whenever it can be done consistently with the rules of law. The maxim, *qui facit per alium facit per se,* should apply with peculiar force to the acts of an insurance agent. He usually represents a company remotely located. Its patrons in his vicinity naturally look to him for direction generally as to the insurance obtained through him. He is generally regarded as having full power in reference to it. Being usually the only man upon the ground having anything to do with it, the persons insured in his company, with few if any exceptions, would, in the absence of notice that his powers were limited, regard his statement as to any matter relative to such insurance as authoritative,

and any notice to him as to it is sufficient. They rarely know anything of the company or of its officers, who issue the policies, and look to the agent through whom they have obtained the insurance as the complete representative of the company in everything connected with that insurance. If they did not consider that they were authorized to do so, it would undoubtedly create distrust and cripple the business. As to third parties, the agent should, in the absence of notice to the contrary, be regarded as possessing all the powers his occupation fairly imports to the public. Under this rule, an agent who solicits the insurance, takes the application, receives the premium, and· delivers the policy, may, in our opinion, by his conduct or acts, bind his company by way of waiver of a forfeiture on account of additional insurance, in the absence of knowledge upon the part of the assured that his powers in this respect have been restricted. This being so, it follows that the knowledge of the agent under such circumstances is to be imputed to the company.''

On the facts of the case at bar, the opinion above quoted seems decisive on the question of waiver and notice.

Another ground of reversal is that indemnity is limited to loss by death caused by accident, disease, fire, lightning, cyclone or theft. The petition merely avers that the animal died. There is no statement as to cause of death. It is argued that the petition is, therefore, defective, because it fails to show that the cause of death is one of those above enumerated and covered by the policy. If there is any possible cause of death other than those named, the company has not called our attention to it. The indemnity afforded is so broad as to justify a solicitor in saying that it afforded the assured absolute protection.

Jackson testified without objection that the animal got sick and died. This is sufficient proof of death by disease. If the averment was defective, the verdict cured it. If the death of the animal had been brought about for a fraudulent purpose, or in a criminal way, it would have been a complete defense to allege and prove it. It was not incumbent upon Jackson to anticipate such a charge. There is no proof or intimation in the whole record that Jackson acted in bad faith, or in a. fraudulent way. He did nothing secretly, and withheld nothing from the company and its agent. The com-

pany says the court erred in refusing to permit it to offer in evidence Jackson's written application for the insurance. The purpose of this evidence was to further prove the fact that the authority of its agent was limited in the way we have heretofore stated. These limitations went to the form of the policy and the extent of the contract, and denied to the agent any authority to alter them. By the signed application, it was contended that this knowledge was carried home to Jackson. This controversy does not grow out of any misunderstanding of the contract, and there is no claim that the policy is different from that applied for. For this reason the application would have afforded no light on the question, and there was no error in the court's ruling.

Perceiving no prejudicial error, the judgment is affirmed.