## Standard Accident Insurance Company v. Patton.

(Decided March 28, 1924.)

### Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1. Insurance—Agent Waiving Forfeiture on Account of Nonpayment of Premium and Extending Date of Payment Acting Within Authority.—An agent of an accident insurance company, who solicited insurance, took applications for policies, sent them in, received the policies from the company and delivered them to the applicant, and collected the premiums as they fell due thereafter, was acting within the apparent scope of his authority when he agreed with a policyholder to waive a forfeiture of the policy on account of the nonpayment of a premium on a due date and to carry the policy in force until a subsequent day on which the insured agreed to pay the premium.

2. Insurance—Law Does Not Favor Forfeitures.—The law does not favor forfeitures of insurance policies.

3. Insurance—No Variance Held to Exist Between Allegation and Proof in Action on Accident Policy.—There was no fatal variance between allegations that regular premiums on an accident policy were paid up to and including the last day of October, and proof that quarterly premium was due September 1, amounting to $3.75, which would carry the policy in force through September, October, and November, and the insurance agent was paid $2.36 on August

26, to be applied upon the premium, and the agent accepted it for that purpose, applied it, and agreed to carry the policy in force until September 19, when the balance of the premium was to be paid.

4. Insurance—Unnecessary to Allege Occupation at Time of Death in Action on Accident Policy.—In an action on an accident policy, it was not necessary to allege that the insured met his death at a time when he was pursuing the same occupation in which he was engaged at the time of the issual of the policy, where it appeared that he did not come to his death through any accident arising out of or in the course of his regular employment, but was killed by a street car.

WOODWARD & WARFIELD and R. P. HOBSON for appellants.

D. MOXLEY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

Appellee, Mary E. Patton, was originally the beneficiary in the policy issued by the National Casualty Company to William Patton on April 18, 1917, which policy was later underwritten by the appellant, the Standard Accident Insurance Company. The policy insured William Patton against death by accident, and agreed and promised to pay Mary E. Patton, beneficiary, in case of the death of William Patton by accident sustained solely through external, violent and accidental means, the sum of $400.00; and further agreed that after the payment of ten quarterly premiums in advance, the principal sum in the policy should become and·be $600.00. It is admitted that more than ten premiums had been paid on the accident policy according to its terms before William Patton came to his death on September 17, 1921, by being struck and run over by a street car. The last premium, $3.75, next before the death of Patton was due on September 1st, 1921. Patton also carried a straight life policy upon which he paid the premiums to the same agent at stated intervals. On August 26, 1921, the agent called at the home of Patton to collect the premiums on his life policy, and Mrs. Patton, who had always paid the premiums on both policies, gave to the agent a check made payable to her husband for an amount in excess of the premiums on the life policy, and being informed by the agent he had no change, Mrs. Patton directed him to give her credit upon the premium to become due on the accident policy

on September 1st. In pursuance to this suggestion the agent accepted the $2.36 extra, and issued to Mrs. Patton the following receipt:

"August 26, 1921. Received of Mrs. Patton $2.36 on William Patton's accident insurance. Balance due $1.39.

THOMAS C. STOKES."

Mrs. Patton told the agent she would later pay the balance of the premiums, none of which was then due. The agent called for the balance of the premium on September 1st, and on several subsequent days, but Mrs. Patton did not have the money and so told the agent but promised to pay him as soon as she could get the money. He called on Friday, September 16th, whereupon Mrs. Patton again told him she did not have the money but she would have it by Monday following, the 19th, and for him to call then and she would pay him. To this the agent agreed, and went away with the understanding he would return on Monday, the 19th. Late Saturday evening, September 17th, William Patton, the insured, was killed as aforesaid.

The company is now contesting the payment of the policy on the ground that the premium had not been paid and that the policy had elapsed at the time of the death of the insured; that the agent Stokes who had collected the premium had no right, power or authority to waive the payment of the premium or to bind the company by such a waiver or agreement so as to keep the policy in force, and these are the questions presented for our decision.

It must be remembered that Stokes as agent for appellant company and its predecessor had solicited the accident insurance policy of Patton and had taken his application for the policy and delivered the policy to him after it was issued by the company. Each premium falling due on the policy had been collected by Stokes and he had done everything with respect to the policy which it was the company's duty to perform so far as the insured and the beneficiary were concerned. He was acting for the company and from the circumstances we judge he was acting within the apparent scope of his authority when he entered into the arrangement with Mrs. Patton by which he was to allow her until the 19th of September to pay the balance of the September premium. Whether

he had actual authority to make such an arrangement is not made to appear, but we cannot but believe that an agent of an insurance company who solicits insurance, takes applications for policies, sends them in, receives policies from the company and delivers them to the applicant and collects the premiums as they fall due thereafter, is acting within the apparent scope of his authority when he agrees with a policyholder to waive a forfeiture of the policy on account of the nonpayment of the premiums on a due date and agrees to carry the policy in force until a subsequent day on which the insured agreed to pay the premium. The law does not favor forfeitures of insurance policies. We have adopted a rule and expressed it in the opinion in the case of Phoenix Insurance Co. v. Spiers and Thomas, 87 Ky. 285, and other cases, that where an agent is entrusted with the general management of a business and has implied general authority to do all that ordinarily enters into the conduct of that business, to that extent the principal is bound by the acts of the agent unless the party dealing with him has notice that his powers are in fact limited. Therefore, an insurance agent should, in the absence of notice to the contrary, be regarded as possessing all the powers his occupation fairly imports to the public, and under this rule, an agent who solicits the insurance, takes the application, receives the premium and delivers the policy may by his conduct or acts bind his company by way of waiver of the forfeitures on account of additional insurance in the absence of knowledge upon the part of the insured that the agent's powers in this respect have been restricted.

To the same effect is the opinion in the case of Kentucky Livestock Co., Inc. v. Stout, 175 Ky. 343, where we said:

"In this connection it must be remembered that insurance companies rarely transact business with the public through their general officers. Their business is generally carried on through local or special representatives. The people deal with such representatives on the faith of their authority to do those things which they claim and have the apparent right to do, and to prevent imposition on the public the courts generally hold that forfeiture provisions may be waived by such agents when they, with knowledge

of the facts, induce the insured to pay the premium or execute a note therefor, upon the assurance that notwithstanding the forfeiture provision his insurance is still in force."

Perhaps a stronger case is that of Home Insurance Co. v. Ballew, 29 L. R. A. 1061, where we said:

"A court will seize hold of a reasonable excuse to avoid forfeitures. If, for instance, an insured can show some reasonable excuse for nonpayment of the premium based upon the conduct of the insurer, the policy will not be regarded as forfeited."

Where there is a conflict in the evidence, in such cases, the rule is as stated in Kentucky Livestock Co. v. Stout, *supra*, "if the facts relied on by plaintiff were true, it was within the apparent authority of Drake to waive the provision with respect to notice, and whether or not he did waive it was a question for the jury." Phoenix Insurance Co. v. Spiers, 87 Ky. 285; Continental Insurance Co. v. Thomason, 27 R. 158.

It is said in brief for appellant that there is a fatal variance between the allegations of the petition and the proof in that the petition alleges that the regular premiums were paid up to and including the last day of October, 1921, whereas, the proof shows that only a part of the premiums had been paid, there being no averment of the waiver of part payment for the balance of the premium.

There is no merit in this contention. The quarterly premium was due September 1st. It amounted to $3.75 and carried the policy in force through September, October and November, the next premium being due December 1st. The wife paid to the agent $2.36 on August 26th to be applied upon the premium and the agent accepted it for that purpose, applied it and agreed to carry the policy in force until September 19th. That sum was more than enough to carry the policy through the entire month of September and almost enough to carry it through October, whereas, the insured met his death on September 17th, long before the policy had lapsed for nonpayment. The averment of the plaintiff in her petition upon the policy is, "the premiums were paid on the said policy up to and including the last day of October, 1921." This averment was traversed. The issue thus made was ma-

terial only to the extent that the premiums had been paid for a sufficient length of time to keep the policy in force until the death of the insured. The issue upon whether or not the premiums were paid after that time, or in full, or up to the end of October, was wholly immaterial.

It is also insisted that plaintiff met his death while engaged in an occupation more hazardous than that for which his policy was issued, the petition having omitted an allegation upon this subject. We think an averment that the insured met his death at a time when he was pursuing the same occupation in which he was engaged at the time of the issual of the policy was wholly unnecessary under the facts of this case, for it is admitted that he did not come to his death through any accident arising out of or in the course of his regular employment but was killed by being struck and run over by a street car, an entirely independent agency, and if the occupation of carpentery is more hazardous than that of advertising or bill posting in which the insured was engaged at the time he applied for the policy the insurer, appellant, could not possibly have been prejudiced by that fact since his death was not the result of accident and injury arising out of his employment.

Finding no error to the prejudice of the substantial rights of appellant the judgment is affirmed.

Judgment affirmed.