## Continental Insurance Company of City of New York v. Simpson.

(Decided May 24, 1927.)

### Appeal from Owen Circuit Court.

1. Contracts.—Parties to contract may agree to amend, alter, set aside, or annul it in any legal way, notwithstanding stipulation to contrary; but exercise of such power by agents may reasonably be limited to those designated for purpose in contract.

2.  Insurance.—Independently of Ky. Stats., section 762a-18, stipula-
tion in insurance policy that forfeiture provisions can only be
waived in writing indorsed on policy is invalid, and waiver may be
made by parol.

3.  Insurance.—Where matter is within apparent scope of local
agent's authority and insured is not aware of any limitations
thereon, insurer is bound by agent's action.

4.  Insurance.—Notice to agents of any material fact affecting risk is
imputed to insurer, thought agent had no authority to act in
premises.

5.  Insurance.—Presumption that agent taking application, issuing pol-
icy, receiving premium, and delivering policy has power to waive
provisions therein by words or conduct though policy provides that
it can be done only by writing indorsed thereon, does not apply to
mere soliciting agents.

6.  Insurance.—Insured advised by indorsement on fire policy, when
returned to him with change of occupancy permit attached, that
agent who sent policy to insurer had no authority to grant vacancy
permits, could not recover for destruction of building during sub-
sequent vacancy without permit, though agent stated that he did
not have to write to company therefor, especially as insured was
not seeking other insurance, which agent's action prevented him
from getting.

T. M. GALPHIN, JR., GORDON & LAURENT and J. W. CAM-
MACK for appellant.

J. G. VALANDINGHAM for appellee.

Opinion of the Court by Judge McCandless—Re-
versing.

In a suit for the destruction by fire of a dwelling cov-
ered by policy in the Continental Insurance Company,
Obie Simpson recovered a judgment for $1,045, and the
company appeals. The policy was issued in June, 1922,
for a period of five years. The insured executed a note
for the premium payable in five installments on the 1st
day of July of each year. Among other things, the policy
provided:

"If any of the buildings described are now va-
cant, unoccupied or uninhabited or shall become un-
occupied or uninhabited and so remain for a period
exceeding ten days without written consent herein,
then in each and every one of the above cases this
policy shall be null and void."

It further provided:

"No local agent or other representative has the power to consent to the assignment of this policy or make any indorsements thereon. All indorsements must be made by an officer of the company in its Western Department office at Chicago, Ill."

The property was destroyed about the 10th of July, 1925. It had then been vacant about three months without any vacancy permit from the company. This was relied upon to avoid liability, to which plaintiff pleaded a waiver.

The facts show that at the time the policy was issued the plaintiff was occupying the house as a residence. In the summer of 1924 he removed, placing tenants in the house. In accordance with another provision of the policy, he then procured a permit for change of occupancy. He admits that Mr. Davis, the local agent, told him that he would have to send the policy to the company to get this permit; that he furnished the policy to Mr. Davis for that purpose; that on its return he observed upon it the following typewritten indorsement, and that this did not appear on it theretofore:

"Notice.—Attention is called to condition in the policy rendering it null and void if the building herein mentioned be or become vacant or unoccupied."

And that these words were stamped on the back of the policy. He further states that the tenants vacated the building upon the 10th of March, 1925, and that it remained unoccupied until destroyed by fire. He says, however, that he was making some repairs and having the house papered preparatory to moving in himself, and that in June he visited the local agent and told him of these matters; that the premium was then due and that he wanted to cancel the policy until he moved back; that Davis said: "Don't cancel the policy. If you are going to move back over there in a few weeks, I can give you a vacancy permit." I said: "I might not get back over there in that time." He said: "If you are not back in 30 days, I can give you one for 60 more." So I told him that I would send the premium off for the policy. I sat there a few minutes, and then I said: "Write it up." But he

said: "I can just tell you and then notify the company; that is all I have got to do; don't have to write." Q. Did he tell you that you had it? A. Yes sir; he said, "I will give you one for 60 days," and I said, "Well, I will send the premium off." He returned home and sent the check for the premium. This was accepted by the company but later returned. He also testifies that Mr. Davis admitted this on several occasions after the fire, and that the adjuster of the company told him that was sufficient. Mr. Davis denies these statements, but says that just a few days before the fire the plaintiff came in and asked him in reference to the vacancy permit, telling him that he was going to move back in the next three or four days. He told him that it would be of no use to send the application off for the permit if he was going to move in within a few days, but that if he did not move in within the next three or four days he would write for the permit for him He never heard from him afterward Duvall, Davis' partner, corroborates him as to what was said in reference to the vacancy permit.

Admittedly the vacancy clause is valid. Burner's Adm'r v. Ger.-Amer. Ins. Co., 103 Ky. 370, 45 S. W. 109, 20 Ky. Law Rep. 71; Robinson v. Aetna Ins. Co., 38 S. W. 693, 18 Ky. Law Rep. 865; Thomas, Trustee, v. Hartford Fire Ins. Co., 53 S. W. 297, 21 Ky. Law Rep. 914. Also it is axiomatic the parties to a contract may subsequently agree to amend, alter, set aside, or annul such contract in any legal way, and their power to do so cannot be controlled or fettered by any stipulation to the contrary in the original contract. But when the business is conducted by agents, the exercise of this power may reasonably be limited to such as are designated for that purpose in the contract. Consistently therewith (and without reference to section 762a, subsec. 18 Ky. Statutes, and which we do not think it necessary to construe in this case), we have uniformly held that a stipulation in an insurance policy providing that a forfeiture provision can only be waived in writing indorsed on the policy is invalid; and that notwithstanding such provisions a waiver may be made by parol. Mattingly v. Sprinfield Fire & Marine Ins. Co., 120 Ky. 768, 83 S. W. 577, 26 Ky Law Rep. 1187, 8 Ann. Cas. 1134: Phoenix Ins. Co. v. Spiers, 87 Ky. 285, 8 S. W. 453, 10 Ky. Law Rep. 254; Burner's Arm'r v. Ger.-Amer. Ins. Co., supra; National Live Stock

Ins. Co. v. Jackson, 160 Ky. 228, 169 S. W. 695. The attempt to control the method of waiver is condemned. This does not deny the right of the company to limit the exercise of the power of waiver to certain named agents. But policy contracts are long, involved, and as a general rule not fully understood by the insured. The latter deals almost exclusively with the local agent and naturally relies upon him for advice and direction in matters relating thereto, and where the matter is within the apparent scope of the agent's authority and the insured is not aware of any limitations thereon, the company is bound by his action, and notice to him of any material fact affecting the risk is imputed to the company, even though he did not have authority to act in the premises. Vice versa, it is not bound if the person dealing with the agent knows that his power is limited and that he is exceeding the powers conferred upon him. Conn. Fire Ins. Co. v. Moore, 154 Ky. 18, 156 S. W. 867, Ann. Cas. 1914B, 1106; Ky. Growers' Ins. Co. v. Logan, 149 Ky. 453, 149 S. W. 922; Hurst Home Ins. Co. v. Ledford, 207 Ky. 212, 268 S. W. 1090; South v. Phil. Fire & Marine Ins. Co., 217 Ky. 612, 290 S. W. 493; Wright v. Northwestern Ins. Co., 91 Ky. 214, 15 S. W. 242, 12 Ky. Law Rep. 850; Standard Auto Ins. Ass'n v. Russell, 199 Ky. 470, 251 S. W. 628; Standard Auto Ins. Ass'n v. Henson, 201 Ky. 233, 256 S. W. 414.

In considering this question the cases supra hold that the agent who takes the application, issues the insurance, receives the premium, and delivers the policy may by his words or conduct waive provisions such as the (vacancy clause), although the policy provided that it can be done only by writing "indorsed" on the policy; a good reason for the conclusion being that the exercise of the high powers enumerated raises presumption of the incidental power of waiver. However, the above presumption does not apply to mere soliciting agents such as Davis and Duvall, and this case turns on the question: (1) Were Davis and Duvall acting within the apparent scope of their authority; (2) whether the insured knew, or was put upon inquiry, as to the limitation upon their power and exercised due diligence to ascertain that fact.

At the time the property had been vacant for over two months. The policy was suspended; Simpson knew this, but did not want to move in for several weeks and

so told the agent; he did not ask for a permit, but feeling that he could not collect his insurance was seeking a cancellation. In this he was not expecting to get other insurance, but merely to be relieved from the payment of the premium upon the suspended policy. He says the agent volunteered to give him a permit; that he waited, and when this was not given to him said, "Write it up," and the agent told him that all he had to do was to tell him and that he would notify the company; that he did not have to write; that he left, sent off the check for the premium, and never returned to ask about the permit. If Simpson had no other information concerning the agent's power to grant a permit, perhaps the court should submit both of the above questions to the jury; but he admits that upon a change of occupancy a year previous he had asked for a permit. At that time he was required to carry the policy to the agent, who sent it off, and it was returned with the permit upon it. Also when returned, it was stamped in such a way as to call his attention to the vacancy clause, and he thus learned that the local agent did not have authority to grant such permits. His attention was also called to different parts of the provisions of the policy which had been in his possession for nearly four years. The provisions of the policy clearly and unmistakably showed a limitation upon their power to grant such permits, and the course of dealing between the parties shows that the the insured was not only put upon such inquiry as would have led a prudent man to ascertain the facts, but that he really was advised of such limitation. It will further be observed that the insured was not lulled into a sense of false security; he was not seeking any other insurance that he was prevented from procuring by reason of the alleged action of the insurance agent; all he was induced to do by the agent, if his story is true, was to pay the premium which has since been returned to him in full. It follows that the court should have given a peremptory instruction for the defendant.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.