## Connecticut Fire Insurance Company v. Roberts.

(Decided June 15, 1928.)

(As Modified on Denial of Rehearing December 14, 1928.)

### Appeal from Shelby Circuit Court.

1. Jury.—It is the duty of the court, under Ky. Stats., secs. 2265, 2267, to see that, when jury lists are submitted to the litigants, none but qualified jurors are on them.

2. Jury.—Litigant has right, under Ky. Stats., secs. 2243, 2264, to have jury list of 18 qualified jurors drawn from panel, of not less than 24 nor more than 30 jurors, and right is substantial, and denial thereof is prejudicial to litigant.

3. Appeal and Error.—Refusal of trial court to complete jury panel in accordance with Ky. Stats., sec. 2247, to make up panel of from 24 to 30 jurors in accordance with sections 2243 and 2264, and conduct in requiring selection for jury from 20 jurors present for service, held prejudicial error, in view of sections 2265 and 2267.

4. Insurance.—Insurance company has power to select such agents as it desires, and may classify its agents, giving extensive powers to some, and less to others.

5. Insurance.—Insurance company's contract must be construed most strongly against it, where company makes the contract.

6. Insurance.—Insured is bound by limitations on agent's authority of which he has knowledge, though limitations affect apparent scope of agent's employment.

7. Insurance.—Where limitations on agent's authority are contained in application or policy, insured is bound to take notice thereof, and cannot hold company for acts of agents beyond such limitations.

8. Insurance.—Insurance company, taking fire risk, has right to provide against overinsurance of the property.

9. Insurance.—Where fire policy contained provision that soliciting agents should not have power to waive or alter any of its terms, insured was chargeable with notice of limitation on power of soliciting agents to waive provision of policy against additional insurance.  And attempted waiver of such provision by soliciting agents after issuance of policy did not bind insurance company where the agents had no power to make a contract of insurance without first submitting the matter to their principal, though agents were authorized to countersign policy.

10. Insurance.—Conditions affecting the risk itself are more strictly enforced than those relating to the modes of establishing the loss under insurance policy.

FRANK M. DRAKE and TODD & EARD for appellant.

L. W. MORRIS, R. F. MATTHEWS and GILBERT & PICKETT for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

Omar Roberts recovered a judgment against the Connecticut Fire Insurance Company for $3,000, to reverse which it has prosecuted this appeal.

On May 21, 1924, Cubbage & Herndon, as agents for the Connecticut Fire Insurance Company, took the application of Roberts for a policy of fire, lightning, and tornado insurance for $3,000 upon his dwelling.  The policy issued thereon contained a provision that it should become void if the insured should then have or thereafter make or procure any other contract of insurance on the property.

The Connecticut Fire Insurance Company says, and it is true, that on January 10, 1925, Roberts made a contract of insurance with the Hartford Fire Insurance Company by which that company issued an additional $3,500 insurance upon this house and $400 on the contents.  The property was destroyed by fire on January 11, 1926.

The Connecticut Fire Insurance Company, by answer, in addition to a traverse of the petition, made the defense we have indicated.  Roberts by reply pleaded that the insurance taken out in the Hartford Fire Insurance Company was taken with the full knowledge, consent, and acquiescence of the Connecticut Fire Insurance

Company; that he discussed the matter with the agents, Cubbage & Herndon, and discussed with them his reasons for taking it out in the Hartford; that the agents agreed, consented thereto, and acquiesced in the issual of a policy by the Hartford. In its rejoinder, the Connecticut denied this, and in a separate paragraph pleaded that the policy sued on contained this provision:

"It is hereby stipulated, and notice is hereby given and accepted, that no agent or employee of this company, or any person or persons, other than Webb M. Elliott, manager of the farm department at room 1601, Insurance Exchange, No. 175 W. Jackson boulevard, Chicago, Ill., shall have power or authority to waive or alter any of the terms or conditions of this policy or to make endorsements thereon."

The surrejoinder of Roberts was practically a repetition of his reply. Trial was had, and the court instructed the jury as follows:

"The jury should find for the defendant insurance company unless it believe from the evidence that after he took out the additional insurance with the Hartford Fire Insurance Company in the sum of $3,500, that the plaintiff told the agent of the defendant that he had taken out additional insurance with the Hartford Fire Insurance Company for the sum of $3,500, in which event the jury should find for the plaintiff in the sum of $3,000, the amount claimed in the petition."

### THE SELECTION OF THE JURY.

The first ground contained in the Connecticut Insurance Company's motion for a new trial is this:

"The court erred to the prejudice of the defendant in refusing to give the defendant a statutory panel from which to draw the jury, although the defendant filed a written motion and asked for a statutory panel."

From the bill of exceptions, it appears that on the trial of the case this happened:

"The court thereupon called a panel of jurors, from which the jury was required to be selected, and

it appearing and being a fact that there were only 20 jurors present for service (the other jurors of the panel having been theretofore excused or discharged by the court), the defendant, by counsel, moved the court to draw 18 men from a panel of 24 jurors to try this action, and further moved the court to complete the panel according to law for the selection of the jury for the trial of this case; which motion the court overruled, to which the defendant at the time excepted and still excepts; and defendant was required to select a jury, to try this cause, drawn from the 20 jurors present for service, and the jury was so drawn over the objection of defendant.''

This trial was begun on Thursday, February 17, 1927, which was the tenth day of the February term of the Shelby circuit court. For service as petit jurors at that term of the court there should have been summoned not less than 30 nor more than 36 persons, whose names had been selected in the manner provided by section 2243 of the Kentucky Statutes. At the February term, the court should have selected from those summoned *not less than 24, nor more than 30 jurors to constitute the regular panel of the petit jury,* and the names of such as attend and are not excused should be entered of record. See section 2243 and section 2264, Kentucky Statutes. After those having satisfactory excuses have been let go, the court should in the manner provided by section 2247 make such additions to the list as will make the number of petit jurors not fewer than 24, nor more than 30. That constitutes the regular panel, and the record should show their names as constituting the regular petit jury panel. During the term vacancies occurring in the regular panel should be supplied in the same way. At the time this cause was called for trial, the regular panel had been reduced to 20. As more than 3 additional jurors were required to fill it, there was but one way to get them, and that was by drawing names from the jury wheel or drum, as is provided by section 2247.

After the names of these jurors have been entered of record, the clerk shall write their names (not less than 24, nor more than 30) on separate slips of paper as near the same size and appearance as may be, and these names (not less than 24, nor more than 30) he shall deposit in a suitable box with a sliding lid, and when a jury is wanted for the trial of a case these papers shall be well mixed in

this box, and the names shall be drawn therefrom. See section 2265. For the trial of a civil case, as this was, the clerk draws 18 names, which he shall write as drawn, on two slips of paper. If any of those called are excused for cause, the clerk will draw from the box other names to supply the vacancies. Then the parties may make their peremptory challenges. See section 2267, Kentucky Statutes.

"It is the duty of the court to see that, when these lists are submitted to the litigants, none but qualified jurors are on them." L. & N. R. Co. v. King, 161 Ky. 324, 170 S. W. 938, and Shellman v. Louisville Ry. Co., 147 Ky. 526, 144 S. W. 1060. It is no answer to this to argue that 18 men can be drawn from a panel of 20, just as well as from a panel of not less than 24, nor more than 30. The Legislature thought otherwise, and its will we must obey. A litigant, if he does not waive this right, is entitled to have a list submitted to him *of 18 qualified jurors, drawn from a panel of not less than 24, nor more than 30*. He is entitled by the statute to have these 18 jurors so drawn. To have a jury selected as thus provided is a substantial right of a litigant, and, as the Connecticut Fire Insurance Company was compelled to go to trial before a jury not so selected, the error was prejudicial to its substantial rights.

Its next ground for a new trial is that the court erred in refusing to instruct the jury peremptorily to find for it at the close of plaintiff's evidence, and erred in overruling a similar motion made at the close of all the evidence. This contention is founded on the limitations of its agents' authority, which it had pleaded in its rejoinder. The insurance company here, being a corporation, necessarily must do business through agents. It has power to select such agents as it wishes and to give to them such power as it sees fit. It may classify its agents and give more power to some agents than to others, and we have, in recent cases, recognized this right. See Continental Ins. Co. v. Simpson, 220 Ky. 167, 294 S. W. 1048; Continental Ins. Co., v. Farlan, 219 Ky. 462, 293 S. W. 952; Commonwealth Life Ins. Co. v. Vanhoose, 208 Ky. 741, 271 S. W. 1062; Miles v. National Union Fire Ins. Co., 201 Ky. 179, 256 S. W. 7; Metropolitan Life Ins. Co. v. Davis, 219 Ky. 335, 292 S. W. 774; Staples v. Continental Ins. Co., 223 Ky. 842, 5 S. W. (2d) 265. If this limitation, which the defendant has pleaded here, were all there is contained in this policy, upon the subject of

authority of Cubbage & Herndon, the answer would be easy; but at the close of this policy, and above the printed signatures of its president and its secretary, we find this:

"In witness whereof, this company has caused these presents to be signed by its president and attested by its secretary, in the city of Hartford and state of Connecticut; but this policy shall not be valid unless countersigned by the duly authorized agent of the company at Pleasureville, Kentucky."

Beneath the printed signatures of those officers, we find this:

"Countersigned by the agent at Pleasureville, Kentucky, this 21st day of May, 1924. Cubbage & Herndon, Agents."

The terms of this insurance contract were of the insurance company's own selection. It could put into this contract what it chose; it could leave out what it chose. It could refuse to issue the contract altogether, but, after it makes the contract, it must be construed most strongly against it. It had the right to confer on Cubbage & Herndon such authority as it chose. Thus it becomes a question for us to determine what effect this provision for countersigning had upon the powers of Cubbage & Herndon; that is, did it take them out of the ordinary local or soliciting agent class, and make of them general or recording agents, as defined by this court in the case of Staples v. Continental Ins. Co., supra?

This is a question that this court has not, so far as we have been able to find, decided. In the case of Nat. Live Stock Ins., Co. v. Jackson, 160 Ky. 228, 169 S. W. 695, we had a case wherein that question might have been presented, but it was not; but the question has been decided by the courts of other states, and we are persuaded that it was correctly decided, and we shall now quote from the opinion in the case of Porter v. Gen. Accident Fire & Life Assurance Corp., 30 Cal. App. 198, 157 P. 825:

"An insurance company, like any other principal, may limit the powers of its agents. Iverson v. Metropolitan Ins. Co., 151 Cal. 746, 91 P. 609, 13 L. R. A. (N. S.) 866. Where this is done by clear and plain terms in the policy, and the applicant accepts the policy, it becomes the contract between him

and the company, and he is charged with knowledge of its terms—among others, the limitations upon the power of the agent of the company. The authority of an agent to effect a waiver in the face of a limitation denying his power to waive warranties or conditions is not vested in every agent who may represent the company. Unless such authority be given to some particular agent to do so, then, as a general rule, it is only agents of the company who are empowered to issue and deliver policies who may be regarded as having the power to waive conditions and forfeitures. As to the character of agents authorized to waive such conditions, the rule includes all persons empowered to conclude contracts of insurance, without first referring the negotiations to their principals, such as those which have full power to effect contracts of insurance, to fix rates of premiums, to consent to changes, to make indorsements, and to cancel policies. Sharman v. Continental Ins. Co., 167 Cal. 117, 124, 138 P. 708, 52 L. R. A. (N. S.) 670; Enos v. Sun Ins. Co., 67 Cal. 621, 8 P. 379. . . . This policy, although countersigned and delivered by the agent at Dallas, was in fact issued from the office of the United States managers of the corporation, where the matter of accepting or refusing the application was determined. The recitals in the policy clearly indicate this fact, and there is no evidence or claim to the contrary. The fact that the policy was delivered to plaintiff through the agent to whom it had been sent, and was required to be countersigned by him, is not sufficient to give him the general powers of the company, in the face of the limitations written into the application and policy.''

A similar question was similarly decided in the cases of Henning v. Am. Ins. Co., 108 Kan. 194, 194 P. 647, and Lippman v. Ætna Ins. Co., 120 Ga. 247, 47 S. E. 593.

The status of these local or soliciting agents is similar to that of soliciting life insurance agents, and it has been held that life insurance agents, who have power to renew life insurance contracts by countersigning renewal premium receipts, are not thereby taken out of the soliciting agent class, so as to be able to waive contract provisions. See Lauze v. N. Y. Life Ins. Co., 74 N. H. 334, 68 A. 31, and Home Life & Accident Ins. Co. v. Haskins,

156 Ark. 77, 245 S. W. 181. From the case of Lynn v. Burgoyne, 52 Ky. (13 B. Mon.) 400 (322), it would appear that a contract providing for a countersignature was not binding without it, but we regard such countersignature as merely for the purpose of authentication and no more. There is nothing to indicate that these agents had any power to even dot an "i" or cross a "t" in this contract, and, if they had no power given them by this provision to in any way alter the contract, then the question is, did they impliedly have such power? Roberts has cited the case of Phœnix Ins. Co. v. Spiers, 87 Ky. 285, 8 S. W. 453, 10 Ky. Law Rep. 254, but a careful reading of that opinion does not support his contention, for, in discussing the powers of a local agent and the rights of the assured to rely thereon, it is said in that opinion:

> "If the latter knew that his powers were limited and that he was invested with no power of waiver, or if there was anything connected with the transaction to put the assured upon inquiry, then any conduct of the agent in excess of his authority would not bind the company. Of course, it could limit his power; and *if the assured knew it had done so, or as prudent men should have known it, then they dealt with him at their peril in matters in excess of his power.*"

This case has often been cited, and we have studied those cases wherein it has been cited, and we give below a number of those cases relating to local or soliciting agents, and we have made extracts therefrom to show what was said therein, and have italicized parts of those extracts. We have tried to divide these cases and to classify them according to the subject-matter of the alleged waiver.

Where the alleged waiver related to a matter that existed or occurred previous to the issue of the policy:

> " 'The powers of the agent are prima facie coextensive with the business intrusted to his care, and will not be narrowed by limitations *not communicated to the person with whom he deals.* An insurance company establishing a local agency must be held responsible to the parties with whom they transact business for the acts and declarations of the agent within the scope of his employment, as if they

proceeded from the principal.' '' Wright's Adm'r v. Northwestern Mut. Life Ins. Co., 91 Ky. 208, 15 S. W. 242, 12 Ky. Law Rep. 850.

"Hawes came to appellee, professing to be an insurance agent, and took his application, and obtained for him the policy of insurance, he had a right, *without notice of a defect in his powers,* to regard him the agent of the company for this purpose; and appellant, by accepting the application, issuing the policy, and keeping the premium, is estopped to say his act was unwarranted, and must take the benefit with the burden. In Phœnix Insurance Co. v. Spiers, 87 Ky. 297, 8 S. W. 453, this court laid down the rule that the party soliciting the insurance and taking the application, *in the absence of notice to the contrary,* should be held the agent of the company." London & Lancashire Fire Ins. Co. v. Gerteisen, 106 Ky. 815, 51 S. W. 617, 21 Ky. Law Rep. 471.

"The rulings of the Supreme Court of North Carolina, West Virginia, New York, Oregon, Massachusetts, and many others are in accord with our own in holding the company responsible for the acts of the subagents, who are given authority to solicit applications for insurance, collect the premiums, and deliver the policies, *in the absence of notice on the part of those with whom they deal that their authority is limited.*" Pelican Assur. Co. of New York v. Schildknecht, 128 Ky. 351, 108 S. W. 312, 32 Ky. Law Rep 1257.

"If the agent, at the time of the issual of the policy, consents for additional insurance to be taken, or informs the insured that this may be done, and the insured, *in ignorance of any limitation upon the agent's authority,* and relying upon his apparent authority, does take out additional insurance; also if afterwards, with the assent of such agent, the insured takes out additional insurance, and with knowledge of that fact the company retains the premium and fails to cancel the policy, this will be deemed an election to waive the forfeiture. In this respect the knowledge of the agent brings notice to the company. However, in order to constitute such election upon the part of the company to continue the policy in force, *it must appear that it had clear notice of*

*the additional insurance;* or that its agent at the time the policy was issued consented to such additional insurance, and that the insured acted on this, in *ignorance of any limitation of the agent's authority in the matter."* South v. Philadelphia Fire & Marine Ins. Co., 217 Ky. 612, 290 S. W. 493.

Where the alleged waiver related to matter occurring after the policy was issued:

"Appellant is estopped from claiming a forfeiture of the policy, when it, by its agent, advised Mrs. Griffith to sell and transfer this policy to appellees, the vendees of the property, and agreeing with them that the policy should continue in force from the time of their purchase. *If appellees at the time had known that the agent's powers were limited, and he had no authority to enter into such an agreement and contract, then the case would be different."* Continental Fire Ins. Co. v. Wilford Stuntson & Co., 100 S. W. 338, 30 Ky. Law Rep. 1176.

"Accepting the verdict as conclusive of the fact that appellant's agent, Byron, did for it consent in writing to the assignment of the policy, it is necessary to consider the legal effect of that act. *There was no testimony tending to show that appellee or Duff knew just what the powers of Byron as appellant's agent were.* . . . It was but natural, therefore, that they should have gone to Byron as a known agent of appellant to obtain an assignment of the policy, and that they should have been satisfied with his statement that he would give the written consent of the company and later accept the writing he gave them." Home Ins. Co. of New York v. Myers, 107 S. W. 719, 32 Ky. Law Rep. 999.

"Payne was the licensed agent of the company. He was set down as the agent of the company in the letterheads, cards, and other such matter used by the company in that locality. *Buchanan had no notice of any restrictions on his authority,* and his acts as to the stock at least were within the apparent scope of his authority." Continental Ins. Co. of N. Y. v. Buchanan, 108 S. W. 355, 32 Ky. Law Rep. 1298.

"Where an agent is intrusted with the general management of a business, and has implied general authority to do all that ordinarily enters into the

conduct of that business, to that extent the principal is bound by the acts of the agent, *unless the party dealing with him has notice that his powers are in fact limited.*"   Standard Acc. Ins. Co. et al. v. Patton, 202 Ky. 566, 260 S. W. 371.

"Where the matter is within the apparent scope of the agent's authority, *and the insured is not aware of any limitations thereon,* the company is bound by his action, and notice to him of any material fact affecting the risk is imputed to the company, even though he did not have authority to act in the premises.  Vice versa, it is not bound *if the person dealing with the agent knows that his power is limited and that he is exceeding the powers conferred upon him.* . . . The agent who takes the application, issues the insurance, receives the premium, and delivers the policy may by his words or conduct waive provisions such as the (vacancy clause), although the policy provided that it can be done only by writing 'indorsed' on the policy; a good reason for the conclusion being that the exercise of the high powers enumerated raises presumption of the incidental power of waiver. *However, the above presumption does not apply to mere soliciting agents such as Davis and Duvall.*"   Continental Ins. Co. v. Simpson, 220 Ky. 167, 294 S. W. 1048.

The reader will note, from the italicized matter in these quotations, the uniformity with which this court had written in each of these cases a provision that such presumption of authority on the part of these soliciting agents *only applied when the insured had no notice of limitations upon the local agent's authority.*   In Staples v. Continental Ins. Co. of N. Y., 223 Ky. 842, 5 S. W. (2d) 265, we called attention to the distinction between the two classes of insurance agents, a distinction we had already noted in Continental Ins. Co. v. Simpson, supra, in which case we said *this presumption of authority to waive did not apply to mere soliciting agents.*

However, it may be suggested that this court departed from that ruling in the subsequent case of Continental Ins. Co. v. Turner, 222 Ky. 608, 1 S. W. (2d) 1063, but we find this stated in that opinion:

"It does not appear here that Emerson was a mere soliciting agent.  On the contrary, it appears

that he was the local agent of the company, and the only person with whom the insured came in contact representing it. *He issued policies in certain cases and was the local agent of the company in the county. No limitation upon his authority being communicated to the insured, he had a right to rely upon Emerson's statement.*"

This issuing of policies clearly put Emerson in that class of agents denominated in the Staples case as recording or general agents. Of course, if Emerson had authority to issue a policy—that is, to make a contract of insurance—he had power to waive provisions in such a contract. Nor was the case of Glens Falls Ins. Co. v. Elliott, 223 Ky. 205, 3 S. W. (2d) 219, a departure, for the agent involved in that case was again a general agent.

Our next question is: Did Roberts have notice of the limitation upon the power of Cubbage & Herndon? *"Where limitations on the agent's authority are contained in the application or policy, insured is bound to take notice thereof, and cannot hold the company bound for acts of the agent beyond such limitations."* 32 C. J. 1065; Quinlan v. Prov. Washington Ins. Co., 133 N. Y. 356, 31 N. E. 31, 28 Am. St. 645; Luellen v. N. Y. Life Ins. Co., 201 Mich. 512, 167 N. W. 950, L. R. A. 1918F, 340; Gazzam v. German Union Fire Ins. Co., 155 N. C. 330, 71 S. E. 434, Ann. Cas. 1912C, 362; Cleaver v. Traders' Ins. Co., 65 Mich. 527, 32 N. W. 660, 8 Am. St. 908; Burlington Ins. Co. v. Gibbons, 43 Kan. 15, 22 P. 1010, 19 Am. St. Rep. 118; Com. Life Ins. Co. v. Vanhoose, 208 Ky. 741, 271 S. W. 1062; Met. Life Ins. Co. v. Davis, 219 Ky. 335, 292 S. W. 774; Lee v. Hartford Fire Ins. Co., 223 Ky. 533, 4 S. W. (2d) 372.

This last cited case is peculiarly applicable here, because the insured, Lee, said he received his policy by mail and deposited it in his local bank without reading it, and Roberts in this case said:

"I never did see the policy until just a few days ago, when Mr. Matthews wrote to the Federal Land Bank and got it."

The insured is in no position to say he did not know the provisions of the policy, when his suit is founded upon it. He knew that these agents, Cubbage & Herndon,

had no authority to issue this policy, because he testified thus:

> "I signed the note and blank contract, and told him to send the policy to the Federal Land Bank."

The blank contract referred to appears from the evidence in this case to be the application for this insurance. The fact that he then knew that Cubbage & Herndon were not going to issue the policy, but were merely taking an application, which had to be sent to the company for its approval, and upon which the company would, if it approved the application, issue the policy, shows he knew these men had only limited authority. From the Lee case it would appear that it was incumbent on Roberts to know what was in his policy. If he did read his policy, or should have read it, he learned, or should have learned, that no one except Mr. Elliott, of the Chicago office, had any power or authority to waive or alter any of the terms or conditions of this policy.

One of these terms was that there should be no other insurance upon this property. That was as much a part of the contract between these parties as the undertaking of the Connecticut Fire Insurance Company to pay Roberts $3,000 in event his house was destroyed by fire. "When a man takes insurance, he is asking some one else to take a risk he is unwilling to carry himself." Queen Ins. Co. v. Cummins, 206 Ky. 300, 267 S. W. 144. An insurance company that is taking such a risk has a right to provide against the overinsurance of the property. The Connecticut Fire Insurance Company did that in this case by writing a policy of $3,000 and providing that no other insurance should be taken thereon; yet after the fire, and after the property is destroyed, it learns for the first time that there is $6,500 upon the insured property. This was a risk which it did not undertake by its own act, and did not itself expressly consent should be imposed upon it. On the contrary, it expressly contracted against such a risk, and expressly contracted that no one but Mr. Elliott, at its Chicago office, could impose such a risk upon it. Cooley, in his Briefs on Insurance, citing many authorities to support them, lays down these principles in volume 5 (2d Ed.) at page 4022:

> "An insurer will be bound by statements and acts of its agents within the apparent scope of their

employment, unless limitations on their authority are brought to the knowledge of the insured.

"It is generally held that constructive notice to an insured of a stipulation limiting an agent's power is sufficient. Such notice is obtained by an insured's acceptance of a policy containing a limitation. He is then charged with knowledge thereof and is bound thereby.

"The prevailing doctrine in most of the states appears to be that restrictions in a policy on the power of agents with respect to waiver do not apply to those conditions which relate to the inception of the contract. The underlying reason for this doctrine is no doubt that stated in some of the cases— that the insured is not bound by restrictions and stipulations of which he has no knowledge. As an insured cannot be charged with constructive notice of the stipulations in a policy until he has accepted it, therefore a limitation in a policy on an agent's authority will not bind the insured with reference to matters occurring prior thereto. Until an insured has either actual or constructive notice of the limitations on an agent's authority, he may assume that the agent has the authority indicated by the apparent scope of his employment."

The federal courts go further than this, and, following the rule in Northern Assurance Co. of London v. Grand View Building Association, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213, reject this doctrine of waiver or estoppel entirely, upon the theory that all negotiations, prior to and leading up to the contract, are, when the contract is made, merged therein, and that the insured must take notice of what is in the policy or contract, which can subsequently be modified only in the manner provided therein. The alleged consent of the Connecticut Fire Insurance Company to this additional insurance was according to the reply filed by Roberts given by its agents, Cubbage & Herndon, after the contract sued on was issued, at a time when he knew, or as a prudent man should have known, what was in his contract, and when he had constructive notice of the limitations upon the powers of those agents. The provision of this policy,

which Roberts claimed was waived, affects the risk itself, and we have written:

> "Conditions affecting the risk itself are more strictly enforced than those relating to the mode of establishing the loss." Kenton Ins. Co. v. Downs, 90 Ky. 236, 13 S. W. 882, 12 Ky. Law Rep. 115; Phœnix Ins. Co. v. Spiers, 87 Ky. 285, 8 S. W. 453.

There is nothing new in this, for we have uniformly written, as the above citations show, that the insured is bound by limitations upon the agent's powers, when the insured has notice of them, and in this case Roberts had notice. Therefore the court should have sustained defendant's motion for a peremptory instruction.

The judgment is reversed.