## State Farm Fire Ins. Co. of Bloomington, Ill., v. Cobb.

## Same v. Cobb, for Use and Benefit of O'Banion et al.

Oct. 20, 1939.

140

Hite H. Huffaker, J. R. Moreman and J. W. Cammack for appellant.

L. M. Ackman for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee in the two appeals in the caption, Kelley Cobb, on October 22, 1936, owned a farm in Owen county, containing something more than 100 acres. Prior thereto he had verbally agreed to sell it to Lobel O'Banion, an appellee in the second appeal in the caption. The latter, pursuant thereto, moved upon the premises, carrying with him personal property consisting of household and kitchen furniture, as well as food for live stock and farm implements—the latter two of which were stored in contiguous outbuildings located near the dwelling; whilst the household furniture was, of course, stored in the dwelling.

On the day indicated, and after matters had assumed that status, Cobb and O'Banion applied to one Harry Duvall, a local agent of the appellant and plaintiff below, State Farm Fire Insurance Company of Bloomington, Illinois, for insurance. Duvall had been its agent for some time prior thereto, and he and the two applicants were well acquainted with each other. They fully explained to him the facts with reference to the ownership of the respective properties proposed to be insured, i. e., that all personal property on the premises belonged exclusively to O'Banion, whilst the legal title to the realty was in Cobb—there having been no writing executed by the applicants to divest him of title. Duvall was what is known as a "soliciting" agent for defendant and appellant, by which it is meant that he had no right to complete the execution of a policy by countersigning his name thereto and delivering it to the insured. On the contrary, his employment required him to submit to his principal the application of the prospective insured, with an accompanying statement of the facts, when it would determine whether or not the policy would be issued on the terms proposed, and if accepted the policy would be issued and forwarded to the local agent for delivery to the insured. We have held in a number of cases that such an agent, without express authority so to do, could not bind his principal by any act of waiver of conditions different from those represented

to the company upon which it based its determination to issue the policy. Two cases so holding are Staples v. Continental Insurance Co., 223 Ky. 842, 5 S. W. (2d) 265, and Continental Fire Insurance Company v. Roberts, 226 Ky. 534, 11 S. W. (2d) 148, 149. Others are referred to in those opinions and it may (at least for the purposes of this case) be admitted that the qualifying authority of such an agent is as so contended for by appellant.

Both Cobb and O'Banion, when they made application to Duvall for insurance, explained to him fully the above facts and gave to him the amount of insurance on personal property desired for the benefit of O'Banion, and the amount of insurance desired by Cobb on the buildings constituting a part of the realty, the one aggregating $1,250 and the other $1,300. They suggested to Duvall the propriety of issuing two policies, one to each of the applicants, covering the amount of insurance they separately desired on their respective properties, but he informed them that it could be arranged by issuing one policy with Cobb as the sole insured therein, and that he had frequently written such policies and would arrange it so that his company would understand it and issue the policy in that way. Following the customary course, Cobb signed an application, setting out the property desired to be insured, with the amount to be covered on each item of both classes, and in which he stated that he was the sole owner of all the property. The application was forwarded to the state agent of defendant, according to custom, to be followed by either the issuance of the policy or its rejection. Duvall stated that accompanying the application as so made out he attached thereto and enclosed with the application what he termed a "rider" saying: "It is hereby understood and agreed that the personal property insured under the within policy is the property of Lobel O'Banion and the real estate the property of Kelley Cobb." The policy was then issued and delivered for a period of five years with an annual premium of $38.84, the first one of which was paid upon the delivery of the policy by Duvall.

In December following the issuance of the policy, and while O'Banion and his family were visiting in Cincinnati, Ohio, all of the insured property was destroyed by fire. Application was made for payment due under the policy, accompanied with proof of loss, which Duvall forwarded to defendant, but it declined to pay any

amount to anyone, upon the ground that the named insured in the policy (Cobb) was not the sole owner of the property as represented in the application and as required by the policy stipulations, which fact it contended rendered the contract void. Following such refusal these two actions were filed in the Owen circuit court against defendant—the one prosecuted solely by Cobb to recover the loss he sustained in the destruction of his real property covered by the policy, and the other in his name, "for the use and benefit of O'Banion," to recover for the loss of the personal property destroyed by the fire, and which as we have said was also included in the policy. The two causes were consolidated and tried together in the circuit court.

Defendant answered relying upon the defense hereinbefore stated, to which plaintiffs replied relying upon two avoidances, (1) that Duvall was fully cognizant of the facts and with that knowledge as the local agent of defendant he not only consented for the policy to be issued as stated, but insisted that it should be done in that way, even after plaintiffs had suggested a contrary course, and (2) that even if Duvall's knowledge and waiver was not binding on defendant, then the "rider" attached to the application sent to defendant by Duvall informed it of the situation, and with that knowledge it issued the policy as delivered and thereby waived for itself strict formality and accuracy in issuing it. Defendant appropriately contested the legal issue involved in avoidance (1), and by its reply it denied that it ever received the notifying "rider" alleged to have been sent by Duvall with the application until after the fire, it then being received as an exhibit with the proof of loss sent by the agent to his principal, and which the latter claimed was the first time it ever saw or heard of the contents contained therein. Following pleadings and motions made the issues, and the jury under the instructions given by the court returned a verdict in accordance with the prayer of the respective petitions, upon which judgments were rendered. Defendant's motion for a new trial was overruled, followed by its prosecuting these appeals.

The material legal issue upon which the trial court proceeded, and to which respective briefs are chiefly directed, is, whether or not Duvall as a soliciting agent only, possessed authority to waive the formalities complained of so as, under the terms of the policy, to de-

stroy its validity. The court held that he possessed such authority and by its instruction made the liability of defendant dependent upon the false issue of whether or not he knew the facts, and with that knowledge consented and agreed for the policy to be issued as it was written. The court appears to have so determined the legal issue of authority of such an agent in the face of our determinations in the cases supra, and then submitted the issue of fact as to the agent's knowledge and consent, notwithstanding all the proof by all of the witnesses, on both sides of the case, testified to the possession of such knowledge, including Duvall himself. Therefore, the case went to the jury on an entirely false issue.

The correct and only issue for submission to the jury, under the pleadings and proof, was whether or not Duvall enclosed with the application the "rider" referred to which, as we have seen, informed defendant of the true situation? Manifestly, if it possessed that information, but nevertheless issued the policy in the form it did, such action on its part constituted a waiver of the defense relied on. Consequently, the only issue of fact, upon the question of liability, to be submitted to the jury, was whether or not the alleged rider was enclosed to defendant in the way and manner and at the time to which Duvall testified. In their briefs counsel for defendant acknowledge the existence of the rule that the receipt of mail will be presumed upon proof that it was duly addressed to the addressee at his known post-office and stamped and deposited; but they insist that when the addressee unqualifiedly denies receipt of the mailed communication it is conclusive of nonreceipt, thereby giving the unqualified denial, not the effect of creating an issue, but the effect of completely overcoming the prima facie presumption of receipt above referred to.

It must be admitted that there is a contrariety of opinion among the courts with reference to that question, as will be seen from the annotation contained in 91 A. L. R. 161, and following pages. But, inasmuch as we have concluded that the particular issue, so discussed, is not the one involved in this case, and therefore not a decisive one, we will not embark upon a discussion or determination of it. We so state because the particular letter involved in this case, i. e., the one containing the application for the policy—and which was mailed be-

fore the contract was executed—was received by defendant, as its witnesses admit. The only issue, therefore, is whether or not the *rider* was attached to the application or contained in that letter at the time of its receipt by defendant, and which is an entirely different question from the one supra, as it is also different from the only one submitted to the jury by the court.

We have said that if the rider accompanied the application, as Duvall positively testified, then defendant was made aware of the facts and issued the policy as written, thereby waiving the defense now relied on. On the issue as to whether or not the rider was contained in the same envelope enclosing the application only two witnesses testified. They were, Duvall in the affirmative, and the state agent of defendant on the negative of that issue. The only question (i. e., as to whether the state agent's denial that the envelope enclosing the application also contained the rider) is an entirely different one and based upon a different principle than the one governing the receipt of an alleged properly mailed letter. So that, we have the testimony of Duvall that the rider was contained in the letter enclosing the application and which is denied only by the state agent of defendant. There is no evidence that the letter containing the application when received by the state agent bore any evidence of having been tampered with. Moreover, the defendant appears to have gotten possession of a copy of the rider before the actions were filed, and it produced that copy upon the trial; but it explains that possession by contending that it was received as a part of the contents of a letter enclosing the proof of loss. However, the fact of its possessing that document is, at least, a circumstance to be considered on the issue as to when it was received. The testimony, therefore, made a clear issue for the jury to determine.

If the jury should find, under proper instruction submitting that issue of fact, that the *rider* was received by defendant *before* the policy was issued, it should then be told to return a verdict for plaintiffs; otherwise for defendant. Instructions relating to value are not complained of, nor are they subject thereto.

We find no other error in the case than the ones discussed, nor are any put forward in briefs. But for the reasons stated, the judgments must be and they are reversed, with directions to set them aside and for proceedings consistent with this opinion.