JUDGE COFEE
delivered the opinion op the court.
This action was brought by the administrator of R. A. Galbraith, deceased, against the appellee, on a policy of insurance on the life of the intestate, bearing date Feb. 2, 1869.
The policy contained, among others, this stipulation: “And it is also understood and agreed by the within assured to be the true intent and meaning hereof, that if the declaration made by or for the said Galbraith in the application for this policy, or any part thereof, bearing date the 22d day of January, 1869, and upon the faith of which this policy is made, shall be found in any respect untrue, then and in such case this policy shall be null and void.”
The following questions and answers were contained in the application referred to:
“ Question. Have you ever had any serious illness, local disease, affection, or personal injury? If so, of what nature and when was it?
“Answer. None.
“ Ques. Are you subject to any conditions, fits, or disease, or addicted to any practice tending to impair the constitution or shorten life?
“Ans. No.
“ Ques. Are your habits of life correct and temperate?
“Ans. Yes.
“ Ques. How long have they been so?
“Ans. Always.
“ Ques. Are you now in good health and free from any symptom of disease?
“Ans. Am sometimes pestered with neuralgia from decayed teeth.”
The appellee, after setting forth in its answer the substance of the foregoing questions and answers, and the stipulation in the policy in regard to the application therefor, and averring that the assured had covenanted that said declarations were true, *32 and agreed that the policy should be void if they were in any respect untrue, alleged that at the time of making the application, and for several years prior thereto, he was afflicted with a constitutional disease, from which he never recovered and which produced his death.
And the appellee further averred that the declaration that he was at the time in good health and free from any symptom of disease was false and fraudulent, becaus.e he was then being treated for and knew he was afflicted with a malignant and dangerous, if not incurable, disorder, and that he never recovered from it.
The evidence showed, without contradiction, that at the time of making the application the assured was afflicted as charged in the answer, and had been so afflicted for some years prior to that time.
The appellant’s counsel offered to prove that the local agent of the appellee, who took the application, knew at the time of doing so that the assured had been afflicted, and that he knew the nature of the disease, and that his affliction was discussed by the agent, the examining physician, and the assured at the time the application was made out, and that the agent said he knew all about his condition, and in fact did know, and that he said it was not necessary to mention it in answer to any of the questions.
To this evidence the appellee objected, and the objection was sustained; and whether that ruling was correct is the first question to be decided.
1. It may be assumed that one who enters into a written contract containing a material false statement to his prejudice can not afterward avoid the contract because such statement is false, if he knew it was false when he entered into the contract.
It may likewise be assumed, without the citation of authority, that as a general rule notice to an agent in regard to *33 matters within the scope of his agency is constructive notice to the principal.
The exact question for decision, then, is whether notice to the agent of the appellee who took the application of appellant’s intestate that he was then afflicted with a dangerous disease is to operate as notice to the appellee, and thereby estop it from relying upon the falsity of the answers made in the application to avoid the policy.
Appellant’s counsel refer to the case of Miller v. Mutual Benefit Insurance Co. (31 Iowa, 216) as establishing the doctrine that notice to the agent is notice to the company. That - case certainly goes a great way toward sustaining the position contended for; but, after a careful consideration of the question, we have been unable to concur with the court in the conclusion reached in that case.
The agent taking the application had no authority to make for his principal a contract of assurance. His only authority, prior to the issuing of the policy by the company through the agency of its managing officers, was to take and forward the application. The form of that application and the questions contained in it showed that the answers made by the applicant were to be made the basis of the contract to be evidenced by the policy; and this alone should have put the intestate upon notice that the agent had no authority to accept false answers. But the application signed by the intestate went further. It contained, at its conclusion, the following: “ It is hereby declared that the above are fair and true answers to the foregoing questions: and it is agreed by the undersigned that the above statements shall form the basis of the contract of assurance, and :also that any untrue or fraudulent answers or any suppression of facts in regard to the above-named person’s health will render the policy void and forfeit all payments made thereon.”
The application containing these recitals and agreements *34 was subscribed by the intestate, and he must be held to have known that the agent was transcending his powers when he consented to the insertion of a false answer to the question, “Are you now in good health and free from any symptom of disease ?”
He was a lawyer by profession, and must have understood his duty to be to make true answers to questions respecting his health, especially when he knew that those answers were to be made the basis of the contract; and there is no intimation in the evidence introduced or offered that he was ignorant of his duty, or that he was overreached by the agent.
He can not therefore have relied upon the agent to com-, municate the truth to the company; and justice to the assured does not' demand that we should presume that he did so, and especially when it appears, from the statement of the agent-made to the company, that he did not do so.
The application contained the following, among other questions, to be answered by the agent: “Are there any facts or circumstances touching this application known to you not stated herein?”
Answer. “None. I have been acquainted with Mr. Galbraith fifteen years; has been a very healthy man, except as stated in the certificate.” That statement was that he had been afflicted with rheumatism.
Having been put upon notice by the questions propounded to him, and especially by the statement and agreement contained in the application, already quoted, that the company would depend upon his answers as the basis of the contract to be contained in the policy, and having, notwithstanding that knowledge, put in a false answer to a question vital to the risk, his representative can not escape the consequences thereof upon a presumption, shown by the record to be contrary to the fact, that the agent communicated to his principal the truth, which he had consented that the applicant might suppress.
*35 1 It is a familiar rule of law that one dealing with an agent is bound, at his peril, to know 'the extent of the agent’s authority, and that if an agent has special instructions, and those instructions are known to one dealing with him, the principal will not be bound by an act done in violation of such instructions; although if they had been unknown to the third person the act of the agent would have been binding upon the principal. This rule is based upon principles of justice and morality, and will not allow one dealing with an agent to say the thing done was within the scope of his agency, and therefore the principal is bound, although such person knew at the time that the agent was violating instructions and committing a fraud upon the principal, and especially when by such a course of dealing the person conniving at the agent’s breach of duty is to become the recipient of benefits from the agent’s fraud.
If, therefore, we assume that the facts the appellant offered to prove existed, it would follow that the agent of appellee committed a fraud upon his principal in suffering an answer to be inserted which was material to the risk and which he knew was false. And if the intestate, knowing, as we have seen he must be taken to have known, that the company would rely upon his answers as true, made an answer which he knew was untrue, he was himself guilty of a fraud; and it can not be pretended that a party to a contract will be allowed to set up and prove his own fraud in procuring it in order to maintain an action upon it.
We are therefore of opinion that the court did not err in rejecting the proffered evidence.
This conclusion is sustained by the case of Smith v. Insurance Co. (24 Penn. St. 323). That was an action on a policy insuring the plaintiff’s stock of merchandise contained in a frame store-house. In the conditions of insurance referred to in the policy it was provided that “a false description by the insured of a building or its contents, or omitting to make *36 known any fact or feature in the risks which increases the hazard of the same . . . shall render absolutely void a policy issuing upon such description;” and also that “the company shall not be answerable for any loss arising from the use of fires in buildings unprovided with good and substantial stone or brick chimneys.”
In the application it was stated that there was one stove and one chimney in the building; that the stove was well secured, and the pipe passed through a crock, also well secured. The house was burned, and the goods covered by the policy consumed. There was no chimney in the building, and the stove-pipe passed through the upper floor and out at the side of the house, and was not secured by crocks, as stated in the application. The evidence showed that the fire did not originate from the stove-pipe. The agent testified that he took the survey, and filled up the application and transmitted it to the company. The plaintiff offered to prove, by the agent and others, that the agent was informed when the application was made that there was no chimney in the building and that the stove-pipe was not secured as required and as represented in the application.
The court rejected the proffered evidence, and charged the jury that, it being conceded that there was no chimney in the building and that the stove-pipe was not secured by crocks, their verdict should be for the defendant.
Commenting on ' these rulings, the Supreme Court, per Woodward, J., said: “The familiar principle of law and morals which requires an agent to be found faithful to his trust is all sufficient to justify the rulings of the court below. If it should be granted . . . that the agent acted as the representative of the company alone, and in no sort for the assured, what right, it may be asked, had the plaintiff to collude with him, and obtain from the company an insurance upon false representations? The principal is bound by the *37 acts of his agent while he acts within the scope of deputed authority; but if, departing from that sphere or continuing in it, he commits a fraud on his principal, a partioeps oriminis shall not profit by the fraud.”
Again the court say: “Obtaining a policy under a false pretense that there was a chimney and a well-secured stove was a fraud on the company, and if practiced by their own agent it was at the instance and with the concurrence and for the benefit of the plaintiff; and so long as the maxim endures that no man may take advantage of his own wrong this plaintiff can not recover on that policy.”
But whether the alleged conduct of the agent, or his connivance at the making of an untrue statement in a matter material to the risk, be a fraud or not, when the assured knows that the written application is to become the basis of his policy, and expressly agrees that if any of his statements made therein are untrue the policy will be void, he can not avoid that stipulation by showing that, although his statement was untrue, the agent receiving the application knew that it was false. (Lowell v. Middlesex Mutual Fire Ins. Co., 8 Cush. 127; Vose v. Eagle Ins. Co., 6 Cush. 42.)
2. The appellant asked a number of instructions which were refused; but as they are not made part of the record, we can not notice them.
3. Exceptions were taken to the giving of two instructions asked by the appellee and given. They read as follows:
“ The court instructs the jury that if they believe from the evidence that at the time JEt. A. Galbraith made application to the defendant for the policy upon his life on which this suit is based he stated in his application that he . . . had never had any serious illness, local disease, or personal injury, and that his habits of life were correct, and always had been so, and that he was addicted to no practice tending to impair the constitution or shorten life, and that he . . . was at the time *38 of said application in good health and free from any symptom of disease, and that said statements, or any part of them, were, in fact, untrue, then the law is for the defendant, and the jury must so find.
“ That the application for life insurance filed and read in this case constitutes the basis of the contract between the parties, and the answers to the questions put to said decedent, R. A. Galbraith, amount in law to a warranty of their truth; and if the jury believe, from the evidence, that any one or more of said answers were false, by reason of which the risk of said company was increased, then the law is for the defendant, whether said Galbraith knew said answers to be false or not.”
Whether the representations alleged to have been untrue are warranties or not it is not necessary in this case to decide.
The first instruction quoted made the liability of the appellee to depend upon the truth of every statement made by the assured which was enumerated in that instruction, whether the risk was thereby increased or not, and in this respect was erroneous.
The statements in the application were that the assured had never had any serious illness, local disease, affection, or personal injury; that his habits of life were correct and had always been so; that he was not addicted to any practice tending to impair the constitution or shorten life; and that he was then in good health. The first instruction authorized the jury to find for the defendant if any of these statements were not literally true; but the language is not to be taken literally, but is to be construed with reference to the subject-matter and the business to which it relates.
No one would understand that it was meant that the assured had never been seriously ill, or that he had never had a local disease or affection or received a personal injury of any kind. The object of the inquiries made was to get such in *39 formation as would enable the company to judge of the character of the risk that was oifered; and a serious illness, local disease, or personal injury which was merely temporary in its appreciable effect upon the health of the party, and had no continuing tendency to shorten life, need not be mentioned in answer to such interrogatories- as were contained in the application in this case. And the same may be said of the statement that his habits were good and had always been good, and that he was not addicted to any practice tending to impair the constitution or shorten .life. The epithet “good” does not mean that his habits were absolutely correct according to the strict rules of ethics, but that they were and had always been ordinarily good. Nor is the statement that he was not addicted to any practice tending to impair the constitution or shorten life to be understood to mean that he did nothing which tended in any degree to those results, but simply that his habits and practices were not of a character to render a risk upon his life more than ordinarily hazardous.
The statement that he was in good health does not import that he was entirely free from infirmity, but simply that he was in a reasonably good state of health, and that his life was such as might be insured with ordinary safety and upon common terms.
But any error in the first instruction, if not cured by the second, in which the liability of the company was made to depend upon whether any'answer that may have been untrue was material to the risk, was certainly cured by the special finding of the jury, made under instruction of the court, that the assured, at the time of making the application, “was not in good health.”
None of the authorities we have examined go to the extent of holding the insurer liable when, in consequence of untrue answers made in the application, the risk is materially increased.
*40 “Representations to insurers, before or at the time of male-, ing the contract, are a presentation of the elements upon which to estimate the risk proposed to be assumed. They are the basis of the contract — its foundation — on the faith of which it is entered into. If wrongly presented in any respect material to the risk, the policy that may be issued thereupon will not take effect. To enforce it would be to apply the insurance to a risk that was never presented.” (May on Insurance, section 183.)
Whether,. therefore, the statement by the assured that he was then in good health be a warranty or a representation merely, being untrue, and the risk being thereby increased, it avoids the policy.
As we have seen, it is not every want of good health that will avoid a policy; and when a jury has found that an assured was not in good health, they ought to be understood to mean that his health was not ordinarily good — not that he was sick from some temporary cause that did not tend to “ shorten life,” as that expression would ordinarily be understood, but that his health was such as rendered his life more than ordinarily precarious.
That the assured was not in good health when the application was made being established as a fact by the special finding of the jury, the court would have been bound, under the provisions of section 358 of the Civil Code, to render judgment for the defendant, although the general verdict had been for the plaintiff.
We are therefore of opinion that there is no error in the record to the prejudice of the appellant, and the judgment is affirmed.
Judge Lindsay not sitting.