## Staples v. Continental Insurance Company of New York.

(Decided February 3, 1928.)

### Appeal from Daviess Circuit Court.

1. Insurance.—Requirement of fire insurance policy that proofs of loss be furnished within 60 days after loss or damage, on penalty of forfeiture of claim, did not provide unreasonably short period for giving notice.

2. Insurance.—Where an insurance company denies liability for the loss within the time for presenting proof of loss specified in fire insurance policy, proof of loss is thereby waived.

3. Insurance.—Evidence as to conversation between insured and insurer's local agent before expiration of 60-day period for furnishing proof of loss under fire insurance policy held to show that agent did not deny liability, but merely advised insured that company had denied liability on policy, thus reporting to insured that company had waived proof of loss.

4. Evidence.—Where insured sought to excuse his failure to pay installment premium note after maturity on ground that insurer's local agents made several unconditional demands for payment of note by letters, insured's explanation of failure to produce such letters at trial of action on policy held insufficient to authorize admission of parole evidence of contents of letters so as to avoid suspension of fire policy, in absence of showing that letters had been lost or destroyed.

5. Evidence.—Testimony of insured, suing on fire insurance policy which was self-contradictory, should be received with great caution.

6. Evidence.—Plaintiff testifying as witness in his own behalf in action on fire insurance policy should not be permitted to give his conclusions, but should be required to state facts as they occurred.

7. Insurance.—Under the scintilla rule, insured suing on fire insurance policy was entitled to have submitted to jury the question whether, after he failed to pay installment on premium note at

maturity, insurance company made an unconditional demand for its payment where he set up such demand as excuse for failure to pay note in order to avoid effect of his default.

LOUIS I. IGELHEART for appellant.

BRUCE, BULLITT, GORDON & LAURANT and CLEMENTS & CLEMENTS for appellee.

Opinion of the Court by Drury, Commissioner— Reversing.

J. G. Staples, whom we shall refer to as the plaintiff, sought a judgment for $1,000 upon a policy of fire insurance issued to him by the Continental Insurance Company of New York, which we shall refer to as the insurance company. The court directed the jury to find for the insurance company, and the plaintiff has appealed.

We shall, in order that the reader may not confuse what we say here with what we have said elsewhere, preface this opinion by stating that there are two well-defined classes of fire insurance risks, the urban risk and the country risk. As a result, there are two classes of insurance contracts, ordinary urban fire insurance contracts and farm fire insurance contracts, and this division follows throughout the business; we have ordinary fire insurance companies, usually represented locally by men authorized to bind their companies, and write, sign, and deliver contracts, and commonly known as "recording agents"; and we have farm fire insurance companies usually represented locally by men who have no authority to bind their companies, who have only authority to take applications and submit them to some chief officer of the company for acceptance or rejection, and after such chief officer has acted on the application, if he accepts the risk, he then sends the local man the policy for delivery. Such local representatives we shall designate as "soliciting agents." While we have more than 165 ordinary insurance companies writing urban business and represented by recording agents, we have less than a half dozen companies writing farm business. The surveys, inspections, maps, diagrams, and rates for the urban business are made by one board set up by these companies, but in the farm business such has proved impracticable, and each insurer makes its own survey, inspection, etc. As a result, many insurers have found farm business unprofitable; there are very few compan-

ies writing such business, and two or three companies do practically all of it. After these preliminary remarks we will now discuss the case before us.

The execution and delivery of the policy and the loss of the property insured is admitted, but the insurance company resisted payment for two reasons. First, because the plaintiff had failed to furnish proof of loss as required by the policy within 60 days after the date of the loss. Second, because the policy of insurance was in suspense when the fire occurred, on account of the failure of the plaintiff to pay the premium installment which was then past due. This policy was issued on December 31, 1921. A cash premium of $27 was then paid, and a note was executed by which the plaintiff undertook to pay the insurance company a like sum on the 1st of January, 1923, 1924, 1925, and 1926. He failed to pay the $27 due on January 1, 1925. The property was destroyed by fire in 1925, the exact date of this destruction being uncertain. According to the proof offered at the trial, this property was destroyed on Friday, March 6, 1925, but according to affidavits filed with and in support of the motion and grounds for a new trial, this property was destroyed on Friday, April 24, 1925. It is admitted that Staples first furnished proof of loss under this policy to the insurance company on Tuesday, July 7, 1925. This was more than 60 days after either of the days claimed as the date of the loss.

The insurance company's first defense is bottomed on this provision of the policy:

"In case of loss, the assured shall, within (15) days, give this company, at its office in Chicago or New York, written notice thereof, and shall within 60 days from date of the loss render to its office aforesaid a particular account of such loss, signed and sworn to by the assured. [Here follows a detailed stipulation concerning the manner of making and the facts to be contained in such notice.] All claims for any loss or damage shall be forfeited by failure to furnish proofs of such loss or damage within the time and in the manner above provided."

In 26 C. J. 373, we find this relative to such provisions in insurance contracts:

"The effect of a failure to give notice or proofs of loss within the stipulated time depends on the

provisions of the policy in that regard. If giving notice and furnishing proofs in such time are made conditions precedent to liability on the part of the insurer, or if a forfeiture is provided for if they are not given in the time fixed, notice and proofs must be given as and when specified in the policy or no recovery may be had.''

Under note 41, on that page, will be found a number of cases supporting the text. In 14 R. C. L. 1325, the rule is thus stated:

"In the absence of any statute on the subject, the parties to an insurance contract may stipulate that failure to give notice of loss within a certain time shall preclude any recovery on the policy, provided the time so fixed is not unreasonably short."

This provision for giving notice within 60 days is not unreasonably short. Such provisions in insurance policies have been before this court and have been upheld. In the case of Standiford v. Am. Ins. Co., 208 Ky. 731, 271 S. W. 1042, we said and cited authority in support of the statement:

"Where a failure to furnish . . . proof within the time specified is made a ground of forfeiture in the policy such provision has been uniformly upheld . . . This ruling is based on reason as well as authority. The subject is one upon which the parties may legally contract. The provision itself is so simple and clear as not to be misunderstood, and when, made a part of the contract there is nothing for the court to do but to give it effect."

Similar rulings will be found in Hartford Live Stock Ins. Co. v. Henning, 206 Ky. 9, 266 S. W. 912; Falls City Plumbing Supply Co. v. Potomac Ins. Co., 193 Ky. 734, 237 S. W. 376; Fidelity & Casualty Co. v. Hart, 142 Ky. 25, 133 S. W. 996; Kenton Ins. Co. v. Downs, 11 Ky. Law Rep. 52; Dixon v. German Ins. Co., 11 Ky. Law Rep. 1001.

In an effort to extricate himself from this difficulty, the plaintiff in his reply said this:

"It is true that the policy sued on contains the provisions set out in paragraph 2 of the amended answer of the defendant, but plaintiff says that prior to the filing of this suit the defendant on March 7,

1925, through its agents, Neely & McKinney, denied any liability under said policy whatsoever.''

Where an insurance company denies liability for the loss within the time for presenting proof, proof of loss is thereby waived. See 26 C. J. 406, and on page 407, under note 72, will be found a number of Kentucky cases supporting this. It will be noted that the plaintiff does not claim that he received any notice from the insurance company denying liability, but bases this upon conversations which he had with Mr. Neeley. He testifies he had two conversations with Mr. Neeley. The first conversation occurred on the morning after the fire. Mr. Staples made a very poor witness; his testimony contains many contradictions, and inconsistencies, but we feel the record warrants us in saying his testimony is that when they reported this fire to Mr. Neeley in this first conversation, that Mr. Neeley said, when told of the fire, ''All right, we will take care of it.'' Staples did not expect Mr. Neeley to pull the money out of his pocket and pay him there on the spot, and what Staples says was equivalent to saying Neeley said he would report the loss to the insurance company. At another place in his testimony, Staples said, ''He said he would notify the company.'' Neeley says this of that conversation:

''Mr. Staples came in the bank there, and I met him in the lobby, and he said, 'I have had a fire,' and I said, 'Yes, and you know your policy is delinquent, and I will put that up to the company, and I will report it.' ''

To us it appears these two men merely used different words to give the same account of that first conversation. Staples claims he had a second conversation with Mr. Neeley about 10 days thereafter, at Squire Hite's while some distilling apparatus was being destroyed. He says this in his testimony about the second conversation:

''Q. Did you afterwards see him, and did he tell you that he had communicated with the company? A. Yes, sir.

''Q. What did he say about it? A. He said they wasn't going to pay me.''

Neeley denies having this second conversation. The insurance company cites this which we said in the case of

Continental Ins. Co. v. Simpson, 220 Ky. 167, 294 S. W. 1048:

> "The agent who takes the application, issues the insurance, receives the premium, and delivers the policy may by his words or conduct waive provisions, . . . a good reason for the conclusion being that the exercise of the high powers enumerated raises presumption of the incidental power of waiver. However, the above presumption does not apply to mere soliciting agents."

We do not feel that we are called on to decide the question of Neeley's authority to waive proofs of loss, or whether he waived such proofs if he had authority, for to us it seems the substance of what Staples testified to about these conversations is that in the first one he advised Neeley of the fire, and Neeley said he would report it, and in the second that Neeley said he had reported the loss and the insurance company had advised him it was not going to pay the loss. Thus Neeley did not deny liability; he merely advised Staples the insurance company had denied liability, thus reporting to Staples it had waived proof of loss, and its subsequent course is in keeping therewith.

The second defense interposed by the insurance company is that, at the time of this fire, this insurance was not in force, because of failure of the plaintiff to pay the premium installment that became due on January 1, 1925. The defense is bottomed on this provision of the policy:

> "It is expressly agreed that this company shall not be liable for any loss or damage that may occur to the property herein mentioned, while any promissory note or obligation, or part thereof, given for the premium remains past due and unpaid."

And this provision of the note:

> "It is hereby agreed that, in case of nonpayment of any of the installments herein named at maturity, this company shall not be liable for loss during such default, and the policy for which this note was given shall lapse until payment is made to this company in New York, or to its Western Department at Chicago."

In an effort to excuse his nonpayment of this note, the plaintiff had pleaded that after the maturity of this installment, and while the insurance was in suspense, the insurance company, through its agents, Neeley & McKinney, made of him an unconditional demand for the payment of the note. We find that similar questions have often been before this court, and that many contributions to our law have been made by failure to pay such insurance installments. We have grouped some of these cases, and they are:

The Continental group: Continental Ins. Co. v. Brown, 216 Ky. 19, 287 S. W. 16; Continental Ins. Co. of New York v. Stratton, 185 Ky. 523, 215 S. W. 416, 8 A. L. R. 391; Continental Ins. Co. of New York v. Peden, 145 Ky. 775, 141 S. W. 43; Continental Ins. Co. of New York v. Hargrove, 143 Ky. 400, 136 S. W. 616; Id. 131 Ky. 837, 116 S. W. 256; Moore v. Continental Ins. Co., 107 Ky. 273, 53 S. W. 652, 21 Ky. Law Rep. 977; 12 Ky. Law Rep. 535; Continental Ins. Co. v. Adams, 8 Ky. Law Rep. 269; Blackerby v. Continental Ins. Co., 83 Ky. 574; Blakesley v. Continental Ins. Co., 5 Ky. Law Rep. 423; Potter v. Continental Ins. Co., of City of New York, 107 Ky. 326; 53 S. W. 669, 21 Ky. Law Rep. 1014; Continental Ins. Co. v. Browning, 114 Ky. 183, 70 S. W. 660, 24 Ky. Law Rep. 992.

The Home group: Morgan v. Home Ins. Co., 216 Ky. 589, 288 S. W. 321; Home Ins. Co. v. Smither, 199 Ky. 344, 251 S. W. 169; Crafton v. Home Ins. Co. of New York, 199 Ky. 517, 251 S. W. 992; Home Ins. Co. of New York v. Roll, 187 Ky. 31, 218 S. W. 471; Cheatham v. Home Ins. Co. of New York, 185 Ky. 494, 215 S. W. 281; Home Ins. Co. v. Ballew, 96 S. W. 878, 29 Ky. Law Rep. 1059; Home Ins. Co. v. Wood, 139 Ky. 657, 72 S. W. 15, 24 Ky. Law Rep. 1638, Ann Cas. 1912B, 373; Home Ins. Co. of New York v. Karn, 39 S. W. 501, 19 Ky. Law Rep. 273; Home Ins. Co. v. Holder, 74 S. W. 267, 24 Ky. Law Rep. 2483; Limerick v. Home Ins. Co., 150 Ky. 827, 150 S. W. 978, 44 L. R. A. (N. S.) 371; Walls v. Home Ins. Co., 114 Ky. 611, 71 S. W. 650, 24 Ky. Law Rep. 1452, 102 Am. Stat. Rep. 298; Home Ins. Co. v. Mears, 105 Ky. 323, 49 S. W. 31, 20 Ky. Law Rep. 1217.

The others: Hartford Fire Ins. Co. v. Johnson, 217 Ky. 826, 290 S. W. 673; Clifton v. Hartford Fire Ins. Co., 203 Ky. 779, 263 S. W. 338; Boatman's Fire & Marine

Ins. Co. v. James & Redford, 10 Ky. Law Rep. 816; Mudd v. German Ins. Co., 56 S. W. 977, 22 Ky. Law Rep. 308.

The provisions of these insurance notes for the suspense of the insurance while the premium remains unpaid have been almost uniformly upheld. There are some cases, however, in which the insured has been allowed to recover. For example, the assured's failure to pay was held excusable where he was given no instructions where and to whom to pay. Continental Fire Ins. Co. v. Adams, 8 Ky. Law Rep. 269; Blackerby v. Continental Ins. Co., 83 Ky. 574.

The forfeiture or suspension of the insurance is waived by an unconditional demand for payment after maturity of the installment. Walls v. Home Ins. Co., 114 Ky. 611, 71 S. W. 650, 24 Ky. Law Rep. 1452, 102 Am. Stat. Rep. 298; Home Ins. Co. v. Smither, 199 Ky. 344, 251 S. W. 169; Limerick v. Home Ins. Co., 150 Ky. 827, 150 S. W. 978, 44 L. R. A. (N. S.) 371. In some of these cases the insured was allowed to recover, although in arrears on his installment where negotiations relative to a change in the contract of insurance were pending. Home Ins. Co. v. Mears, 105 Ky. 323, 49 S. W. 31, 20 Ky. Law Rep. 1217; Home Ins. Co. v. Holder, 74 S. W. 267, 24 Ky. Law Rep. 2483. The failure of the assured to pay was excused where he had been given a notice that did not tell him his policy was suspended, but indicated that possibly suspension might follow if he did not pay his note. Clifton v. Hartford Fire Ins. Co., 203 Ky. 779, 263 S. W. 338. The insured's recovery in some cases was apparently based on an established course of dealing, excusing prompt payment of the installments. Home Ins. Co. v. Ballew, 96 S. W. 878, 29 Ky. Law Rep. 1059; Continental Ins. Co. v. Browning, 114 Ky. 183, 70 S. W. 660, 24 Ky. Law Rep. 992; Moore v. Continental Ins. Co., 107 Ky. 273, 53 S. W. 652, 21 Ky. Law Rep. 977; Mudd v. German Ins. Co., 56 S. W. 977, 22 Ky. Law Rep. 308. This court has, however, since departed from that holding. Dancey v. Cotton States Life Ins. Co., 217 Ky. 547, 290 S. W. 317; Hartford Fire Ins. Co. v. Johnson, 217 Ky. 826, 290 S. W. 673.

The policy in this case gave Staples specific directions where and how to pay. There is no suggestion that the notices given him had any tendency to deceive him or to lead him to believe that his insurance was in force, and the only excuse he has or offers for not paying this

is that the insurance company, through its agents, Neeley & McKinney, made of him several unconditional demands. for the payment of this installment. He says they wrote him a letter about every week, demanding that he pay his premium. These letters were not produced, nor is there anything in the record to show that they have been lost or destroyed. Staples says he looked for them, but does not say whether or not he found them. He does not say whether or not he has them, but said that he did not think it necessary to file them. His explanation is not satisfactory, and parol evidence of contents of those letters should not be admitted, in absence of further and better explanation of why they are not produced. See sections 1226 and 1227, subject, "Evidence," 22 C. J. 980 et seq. Staples, we repeat, made a very unsatisfactory witness. He made statements on his direct examination squarely contradicting things said in his deposition, and often, on cross-examination, he would give answers that were direct contradictions of things he had sworn to on his direct examination, and counsel for the insurance company insist in brief that, as a result of these contradictions and inconsistencies, the evidence of Staples proves nothing, and that, therefore the court should disregard his evidence entirely, and that there was nothing to leave to a jury and the directed verdict is right. Some authorities seem to sustain such a position. See St. Louis Southwestern R. Co. v. Hutchinson, 79 Ark. 247, 96 S. W. 374; N. C. St. R. Co. v. Fitzgibbons, 79 Ill. App. 632; State v. Miller, 49 Mo. 505; The Santissima Trinidad, 7 Wheat. 283, 5 L. Ed. 454. We agree with the Supreme Court that such evidence is to be received with great caution, but while we are disposed to apply the maxim, "Falsus in uno, falsus in omnibus," yet we are impressed by this which is taken from Dietz v. Wade, 7 Fed. Cas. No. 3903:

> "Inconsistencies and incongruities in the testimony of witnesses whose general character for veracity has not been impeached should be reconciled, when it can be done without violence, especially when there is no extrinsic reason for suspecting error or fraud. And, if the testimony cannot be reconciled, the presumption of reason, as well as of law, will impute the variance to an innocent misconception, rather than to a willful and corrupt misrepresentation."

On the next trial, the court will not allow this witness to give his conclusions, but require him to state the facts; for example, on this trial, he was allowed to say Neeley & McKinney threatened to sue him instead of stating just what they did say. His testimony contains many such conclusions, and many of the questions propounded to him were so framed as to suggest answers containing conclusions.

Under the scintilla rule, Staples was entitled to have submitted to the jury the question whether or not, after he failed to pay this fourth installment, the insurance company made an unconditional demand for its payment.

The judgment is reversed.