## Globe & Rutgers Fire Insurance Company of New York v. McIntosh.

(Decided February 1, 1929.)

WOODWARD, WARFIELD & HOBSON, JOHN MARSHALL, JR., and MORGAN & EVERSOLE for appellant.

WILSON & WILSON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The appellant, which we shall refer to as the insurance company, seeks to reverse a $750 judgment recovered against it on a policy of fire insurance.

On October 10, 1923, the insurance company wrote a policy insuring P. A. McIntosh's household goods and kitchen furniture against loss by fire, while located and contained in a one-story, composition roof, frame dwelling situated on east side of High street in North Hazard, Perry county, and not elsewhere.

On March 31, 1928, McIntosh sued the insurance company on this policy, and alleged these goods were destroyed by fire on April 1, 1924, about 6 p. m.

The insurance company for answer traversed the petition, and in a second paragraph alleged that McIntosh had, after procuring this policy, without its knowledge or consent, removed these goods from this building, and that they were not, when destroyed by fire, situated in the building described in the policy. To this McIntosh filed a reply in two paragraphs. In the first one he traversed the answer; in the second he admitted that these goods were not burned while in the building named in the policy, but were burned while contained in another building, and alleged:

> "Plaintiff says that at the time this policy of insurance was issued to him upon the solicitation of the defendant's agent, James H. Hammonds, Hazard, Ky., this plaintiff informed the said Hammonds that he was living in rented property and was having a home built on his own lot and would be moving into his new home in a few months and thereupon the said J. H. Hammonds told this plaintiff it would be perfectly satisfactory with the company, the defendant herein, for the plaintiff to move said furniture and household goods and that he, the said agent would transfer said policy from the building in which the plaintiff then lived to the building into which the plaintiff would move the furniture and household goods."

There was no allegation that any provision relative to this insurance upon which these parties had agreed was omitted from the policy, through any fraud or mistake, and no effort was made to reform the policy. A demurrer to that paragraph was overruled, with exceptions. The defendant by rejoinder put these allegations in issue, and, upon the trial, the plaintiff testified in substance to the matter pleaded. Whereupon the defendant moved to exclude that testimony from the consideration

of the jury, but the court overruled it, with exceptions by defendant, and at the conclusion of all the evidence, the court instructed the jury as follows:

"If the jury shall believe from the evidence in this case that prior to the time the property mentioned in evidence and included in the fire insurance policy introduced in evidence, was destroyed by fire that the agent of defendant company agreed with the plaintiff that the property consisting of household goods might be removed from the location stated in the policy to the new home of plaintiff and that the said agent would protect the plaintiff under said policy," etc.

The plaintiff moved to his new location about January 1, 1924. The evidence shows that the insurance rate at the old location was 90 cents, and was $2.30 at the new location. McIntosh in his evidence testified that Hammonds told him there would be a different rate at the new location, and he would look it up, and that McIntosh said, "If there is, send me a bill and I will pay it." Hammonds denied this. Hammonds belongs to that class of agents called general agents, which we denominated in Staples v. Continental Ins. Co., 223 Ky. 842, 5 S. W. (2d) 265, as recording agents. He had authority to issue this policy and to thereafter agree to change it, so as to cover the insured property at the new location.

"The insurance is not forfeited by a removal of the property to a new location with consent of insurer or its authorized agent, although the property is not covered during transit to the new location. An agreement for the removal and for the continuance of the policy in force is in effect a new contract and gives rise to a new risk. The fact that the rate of insurance is greater at the new location and that the insured does not pay or tender the additional sum does not release insurer from liability where insured agrees and holds himself ready to pay it." 26 C. J. 228.

The court erred in overruling defendant's motion to exclude the evidence of the plaintiff relative to the promise of the agent made previous to or at the time the insurance was written to transfer this policy to the new location, as all conversations and agreements between

McIntosh and Hammonds previous to the issue of this policy must be treated as merged in it. See 13 C. J. 597; 6 R. C. L. 914, sec. 298. It cannot be urged that this agreement, made before the policy was issued, to transfer the coverage to the new location, was a distinct collateral agreement, and we feel that the following, taken from the case of Edge v. Ott et al., 151 Ky. 672, 152 S. W. 764, fully answers any contention that might be made relative thereto:

"If the written agreement was reasonably or naturally connected with the previous verbal agreement, there would be much force in the argument that the verbal agreement was merged in and superseded by the written agreement, and so the written agreement should be treated as containing the whole of the contract between the parties."

The evidence of the plaintiff relative to the conversations between him and Hammonds previous to the making of this policy should not have been admitted, because the rule is well settled that a written contract cannot, in an action thereon without effort to reform it, be varied by parol evidence of agreements or understandings had before the writing was made. See 22 C. J. 1070; 10 R. C. L. 1030. Numerous Kentucky cases will be found cited under this and the foregoing citations to those texts. We had not the identical question, but a similar one, before us in the case of Castleman v. Southern Mut. Life Ins. Co., 14 Bush (77 Ky.) 197, and there we said:

"When the parol contract is made prior to the written, it is presumed to have been absorbed in the more deliberately-executed written contract. There may be a subsequent parol modification or alteration of or substitution for the written contract, but where, as in this case, the two contracts are entered into at the same time, both made with reference to the same subject-matter and founded upon the same consideration, evidence of the parol contract is not admissible to contradict, add to, or to vary the written stipulations."

Again, in the case of Nat. Mut. Benefit Ass'n v. Heckman, 86 Ky. 254, 5 S. W. 565, 9 Ky. Law Rep. 525, we had substantially the same question, and we said:

"It is a universal rule that a written contract must contain all the essential terms of the contract;

and that a verbal agreement appertaining to the subject-matter of the written contract, made before or at the time of the written contract and not embraced therein, is not admissible for the purpose of restricting, enlarging, or in any way varying the terms of the written contract."

The error of the court in refusing to exclude the evidence of McIntosh relative to what occurred before or at the time the policy was issued continued and was manifest in the instructions quoted, wherein the court allowed the jury to consider that along with the other evidence of what happened prior to the destruction of the property by fire.

There are other errors alleged, but, as the pleadings may probably be amended before the next trial, and as the issues and evidence upon the next trial may be very different from the issues and evidence on this trial, anything we might say here upon those questions would perhaps be entirely inapplicable then; therefore those questions are reserved.

For the reason indicated, the judgment is reversed.