## Canewood Oil Company et al. v. Cox.

(Decided Oct. 20, 1933.)

C. F. SPENCER for appellants.·

LEEBERN ALLEN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

This is the second appeal of this case. The opinion on the first appeal is reported in 207 Ky. 168, 268 S. W. 1081. It is a suit brought by the appellee against the appellant, the Canewood Oil Company, a partnership composed of Harry B. Clay, L. C. Neal and Frank Thompson, to recover under an alleged express contract, the terms of which as claimed by the appellee are that the appellants were to and did employ him to operate a drilling machine for them in drilling for oil and gas at such points and places as they were to designate upon the Fred Adams lease or the A. C. Creech lease in Wolfe county, Ky., the appellants to furnish a drilling outfit and everything complete with the exception of the labor, and the appellee to furnish all labor with which to do the drilling; that at least two wells for oil or gas on one or both of said leases were to be drilled

and as many more as should be mutually agreed upon; that the appellants were to pay the appellee the sum or $1 per lineal foot from the surface or top of the ground down until the cap rock of the oil sand should be reached, and thereafter to pay appellee the sum of $40 per day until the well should be completed; that, in the event the appellants did not have the machinery on the leases and ready for the appellee to begin drilling by July 28, 1919 (the contract having been entered into on the 15th day of July, 1919), or in the event the machinery should thereafter for any reason be shut down by the appellants, then the appellee was to be paid for each day of "shutdown time" the sum of $40. The appellee claimed that the appellants had breached the contract, in that they had never furnished the drilling machine or made any location, and that, after keeping the appellee in a state of waiting for 68 days thereafter, declined to go forward. He claimed damages in the sum of $40 per day for the 68 waiting days and the profit he would have made on the drilling of the two wells—a total of $3,720. The answer was a complete traverse of the appellee's claims. On the first trial, the appellee took the position that the contract between him and the appellants was made for the appellants by Frank Thompson. Thompson being dead at the time of the first trial, the appellee was not then permitted to testify concerning the terms of the contract. The verdict which the appellee secured on that trial was reversed by this court, because there was no competent proof to establish the contract claimed by the appellee. On the return of the case to the circuit court, it was retried before a jury, and this time the appellee claimed that the contract he relied upon was made for the appellants by Clay and Neal. These men denied that any contract had been made by them with the appellee. The court submitted the case to the jury, instructing it by the first instruction that it should allow the appellee in the event it found that a contract had been entered into as claimed by the appellee and that the appellants had breached it, as claimed by the appellee, the sum of $1 only for the profit he would have made had he carried out the contract, and by the second instruction that, if found that a contract had been entered into and breached as claimed by appellee, it should find for appellee whatever shutdown time had occurred at the rate of $40 per day. The jury awarded the appellee the $1 dam-

ages allowed by the first instruction and under the second instruction $40 a day for 23 days. From the judgment entered on that verdict, this appeal is prosecuted.

Appellants for reversal first insist that they were entitled to a peremptory instruction because the appellee had testified on his first trial that he had made the contract here relied upon with Thompson and not with Clay and Neal, but on the second trial had testified just the opposite. The case is before us on a narrative bill of exceptions, and, although it appears from this bill that appellee was asked if he did not on his first trial testify that he made the contract with Thompson and appellee replied in the negative, there is nothing in the bill of exceptions to show that the testimony on the first trial was ever introduced on the second trial to contradict the appellee. The bill of exceptions filed in the first trial is made a part of the record in this case, but there is no showing that it was ever used on the second trial or that appellee had been contradicted by its contents. Of course, even had appellee been so contradicted, it would still have been for the jury to say whether it believed the appellee told the truth now or on his first trial, and so even under such circumstances the motion for a peremptory instruction would have been properly overruled. See Staples v. Continental Ins. Co. of New York, 223 Ky. 842, 5 S. W. (2d) 265. Nor can we say that on the record as presented to us the verdict is flagrantly against the evidence. True it is that Neal and Clay deny they made any contract with the appellee and say that he testified on the first trial that he made the contract with Thompson and not with them, but the appellee had testified that he did make the contract with them and not with Thompson, and denied that he had testified to the contrary on the first trial. The jury did not have the transcript of the evidence or the bill of exceptions of the first trial before it, so far as the record of this trial is concerned. All it had on the question here under discussion was the testimony of Neal and Clay on the one side and the appellee on the other. In such state of case, a finding in favor of appellee cannot be said to be flagrantly against the evidence produced before the jury, for under familiar law it had the right at least under such circumstances to believe appellee to the exclusion of Clay and Neal.

It is next argued that the court erred in admitting incompetent testimony to the effect that the usual and customary allowance for shutdown time in this oil field was $40 a day. Technically, of course, this evidence was incompetent, since the issue was whether or not an express contract had been made to pay $40 a day for shutdown time. But the admission of the complained of testimony could not have been prejudicial, since, if the contract claimed by appellee had been entered into, then the rate was $40 a day, no matter what the customary price for shutdown time was, and, if no contract had been entered into, appellee was entitled to nothing.

It is lastly argued that there were errors in the instructions. Instruction No. 1 in substance told the jury that, if they believe that the appellants entered into a contract with the appellee by which they were to furnish him all the tools, machinery, fuel, and water necessary to drill two wells, and that they failed to furnish same or to make a location for said wells, they should find for the appellee damages in the sum of $1. This the jury did. Appellants complain that this instruction authorized the jury to find that they had breached the contract by failing to furnish a location for the wells without requiring the jury to believe that the duty to furnish such location was one of the terms of the contract. It may be said here that no such complaint is made as to the second instruction which submitted the question of the terms of the contract and the breach thereof as to shutdown time. Though perhaps the court did commit error in this first instruction as appellants complain, yet only nominal damages were authorized by this instruction, and only nominal damages were awarded. This court will not reverse a case where so trivial an amount as $1 is involved as is the case here. See Malone v. Keith, 205 Ky. 711, 266 S. W. 381; Commonwealth v. Louisville Transfer Co., 181 Ky. 305, 204 S. W. 92; Ferrell v. Ferrell, 48 S. W. 153, 20 Ky. Law Rep. 1023.

So far as the second instruction is concerned, appellants complain that it put no limit upon the number of days for which the jury might award shutdown time. However, the appellee had testified that he had been shut down 68 days, and there was no testimony to the contrary, the appellants confining their proof to the support of their assertion that they had not entered into

any contract with the appellee. The jury awarded the appellee compensation for only 23 days shutdown time, so that the error, if there was error, in failing to put a limit in the instruction on the number of days for which shutdown time could be allowed, was plainly nonprejudicial.

No error appearing prejudicial to appellant's substantial rights, the judgment is affirmed.