## Aetna Ins. Co. of Hartford, Conn., v. Eblen.

(Decided Dec. 11, 1936.)

FRANK M. DRAKE for appellant.

N. B. HUNT for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

We shall refer to appellant as the Insurance Company. It seeks the reversal of a judgment for $1,000 with interest from May 9, 1931, recovered against it by the appellee.

In May, 1930, Clyde Culver, a soliciting agent of appellant, took the application of Mrs. Effie L. Gaines for $1,000 fire insurance upon the dwelling house situated on a farm in Henderson county, Ky., belonging to her and her children.

The policy was duly issued shortly thereafter and Culver delivered it to Mrs. Gaines and took her personal note to himself for the first premium and her note to the Insurance Company for the premium installments to be paid in 1931, 1932, 1933, and 1934, the policy being written on the five-year plan. She had not paid her

note for the first year's premium and in the early part of January, 1931, Culver called to see her about it and she told him she had sold her farm to Mr. Eblen.

Culver calculated the premium earned on the policy up to that time, $12.82, and took up the policy. Mrs. Gaines did not pay the $12.82, however. About that same time the appellee Eblen had bought a farm from his brother-in-law, M. L. Cooper, and this same Insurance Company had a policy of insurance upon the buildings on that property. Mr. Cooper testified Culver asked him to get his brother-in-law, Eblen, to keep these policies of insurance.

The remaining facts will be brought out in our discussion of the motion for a directed verdict made at the close of the plaintiff's evidence and renewed at the close of all the evidence and each time overruled.

### Motion for Directed Verdict.

The Insurance Company insists it was entitled to a directed verdict in its favor. So we will look at the pleadings and the proof.

### Plaintiff's Pleading.

Mr. Eblen had sued upon an alleged oral contract made with him by Culver by the terms of which he alleges the Insurance Company agreed to continue in force for Eblen's benefit and protection the policy of insurance issued to Mrs. Gaines and her children, in event Eblen obtained a conveyance of said land to himself and that the Insurance Company would transfer that policy to Eblen and Eblen would be protected by that policy from the date the Gaines property was transferred to Eblen, no date for the transfer being agreed upon, and it was agreed that Eblen should and would pay the premium installments then remaining unpaid to the Insurance Company.

The jury must act on the evidence, but it may reject any evidence that is disputed, therefore in passing on this motion we will only consider the evidence offered by Eblen and that part of the evidence introduced by the Insurance Company which is undisputed, and we must take all this as true. That is as favorable as Eblen can ask. See 64 C. J. p. 446 sec. 434.

There are four important occurrences detailed and we shall now consider them.

### Culver's Conversation with Eblen.

After learning of Eblen's purchases of these insured properties, Culver took the Gaines policy and the Cooper policy and went to Henderson and saw Eblen at his residence in January, 1931. Eblen agreed to take over the Cooper policy and signed the application for the transfer of it and the note for the unmatured premium installments upon it, paid Cooper the unearned premium and Culver sent that policy to the Insurance Company to have the transfer made.

Culver urged Eblen then to take over the Gaines policy also and assured Eblen he then had an insurable interest in that property, but Eblen declined to do so and told Culver, "As soon as the court makes a deed in this other property, if he does, I will let you know at that time whether or not to transfer the other policy." At another place in his testimony Eblen says this about that conversation:

> "The question was open, understand, between Culver and I. I didn't tell him when I had the conversation positive I would keep the insurance with him, but I told him if I decided to keep the insurance with him, when the deed was made according, to the terms of our understanding, that I was to get the benefit of the balance on the premium, that I would let him know, and when I sent him word he could transfer the policy. I did let him know, and accepted that proposition after this deed was made."

We can certainly say there was no insurance contract made that day in Henderson. Yet Eblen testifies, Culver told him he himself had the power to transfer this policy to Eblen, and the policy would be in force from that day. This sounds rather strange in view of the fact Eblen had not paid 1 cent to any one for this insurance and had refused to say whether he would take it or not.

### Culver's Conversation with Cooper.

Eblen got a deed from the court for the Gaines property on March 9, 1931, and Mr. Eblen introduced his brother-in-law, M. L. Cooper, and Cooper testified that he told Culver Eblen had a deed to the Gaines place and wanted the insurance policy on the Gaines place, and that Culver told him he would "fix it up." Culver

sharply disputes this, but we must take what Cooper says as true, and that Culver did agree to fix it up.

### Efforts to Fix it up.

The Insurance Company had by then transferred the Cooper policy to Eblen and that policy had come back to Culver.

Culver mailed this Cooper policy to Eblen, sent along to him an application for transfer of the Gaines policy and a note for the unmatured premium installments on it and wrote him a letter of a few lines. Culver kept no copy of that letter and Eblen says he destroyed it ten minutes after he got it. They give very different accounts of what was in it, but we must take Eblen's account as true. He never undertakes to reproduce this letter but at three places in his testimony he testifies about it, and here is what he says:

> "I sent word by him to Culver I was going to keep the insurance and for him to transfer the policy, and a few days after that, I guess March 15th or 20th, I got a letter from Clyde inclosing these papers; a note for me to sign for the second premium, which showed it was due on June 1st, and a blank form to sign, which he told me in the other case was nothing but a formality, and the Cooper policy—They all came in the same envelope about the 20th of March.

> "About three lines were in the letter, the first thing, he thanked me to keep the insurance with him. He said it would help him with the company, and then he said 'inclosed find the Cooper policies,' sign them and send them back to him. He just said 'sign the papers and return them to me,' and he thanked me for that business."

Culver testified that Mr. Cooper told him Eblen had received a deed to the Gaines land, but he thought Eblen was going to take insurance with Powell and Martin in Henderson, and when the Cooper policy was returned he mailed it to Culver and sent with it a note and an application for transfer of the Gaines policy. Eblen testifies Culver then thanked him for letting him have the business. What business could it be Culver was thanking for? Plainly it was for the Cooper policy for that was the one Eblen had agreed to take. Culver was

trying to get Eblen to take the Gaines policy but Eblen had not agreed to do so. Cooper testified Eblen told him to have Culver fix up the Gaines policy but Eblen had never done his part of that fixing up.

It does seem a trifle strange that Eblen should destroy this letter and yet should keep everything else that came in that envelope, but he may have done so.

Taking his account as true, Eblen knew he had sent Culver word he wanted this Gaines policy and that Culver should fix it up, and from the inclosures he saw Culver was endeavoring to fix it up, and was pursuing the same method that Culver and he had pursued 60 days before in the transfer of the Cooper policies. Mr. Eblen testifies he did not know whether these were the same kind of blanks used in the transfer of the Cooper policy, and that he had merely signed that blank without reading it, but he testifies so fully about what was in the application for transfer of the Cooper policy, we are persuaded the stenographer taking his testimony may possibly have misread her notes.

Anyway Mr. Eblen has been county attorney, was master commissioner for years, has been a successful lawyer, is now retired, is receiver of the Henderson National Bank, and has his own business to look after, and we are quite sure he knew what these blanks were for and what to do with them, as we shall see in a moment.

### The Fire and What Followed.

Late in the day of Saturday, May 9, 1931, the dwelling house on this Gaines farm burned, and shortly after that Eblen called on Culver and said, so he testifies:

"Clyde, I would like to see that policy; I want it— that you promised to transfer to me. I don't want you to do anything wrong about this thing; I have got these things here and I have been trying to find you for nearly two months."

The things he had then were this application for the transfer of the Effie L. Gaines policy and the note for the premium installments on that policy, they are in this record and are both signed by Mr. Eblen, and they are properly filled in. The application for transfer shows in what appears to be Mr. Eblen's writing, that he has a warranty deed; that there is a lien on the property for $3,000 due to Mrs. Effie L. Gaines and her children in one, two, and three years; that the loss is to

be made payable to them; that the cash value of the dwelling is $2,000; that the purchase price is $4,000; that there are 111 acres in the tract; that the premises will be occupied by a tenant; that he had never had a fire loss, etc.

This application for transfer and the note, when sent to Eblen, were printed on one sheet of paper which was perforated so that they could be torn apart and right between them there was printed this:

"All unpaid installments must be assumed by the Applicant, and unless the attached note is completed and signed accordingly, transfer of Insurance will not be made."

Eblen from his experience in the transfer of the Cooper policy knew Culver was an agent of limited authority and the Insurance Company had in its answer alleged:

"Defendant states that plaintiff had notice and knowledge of the limited power of said agent and knew that said agent had authority only to take applications for insurance on farm property, such as is described in the petition herein, and to transmit same to the Home Office of the Company for the issuing of a policy thereon in case said applications were accepted."

The plaintiff filed an elaborate reply but he did not deny the above quotation from the defendant's answer, nor was this controverted in any way. Plaintiff also knew it was necessary for him to allege and prove he should and would pay to defendant the consideration for this policy or contract of insurance and he did allege it, but there is not one iota of evidence of any offer by Eblen to pay either by cash or by note until after the fire when he brought his signed note to Culver and told him he had been looking for him for two months, to give him that note, had been unable to find him and did not want Culver to do anything wrong. Eblen nowhere intimates there was any lack of postal service in Smith Mills or gives any suggestion that he could not have returned these papers to Culver by mail just as Culver had sent them to him.

Considering the foregoing in the most favorable light to Eblen and most strongly against the Insurance Company, the conclusion is inescapable that Eblen failed

to establish the making of a contract of insurance and the court erred in overruling the Insurance Company's motion for a directed verdict in its favor.

### Pleadings Stricken.

As the case may be tried again, we will add that the court erred in striking from the defendant's answer those parts thereof wherein it set out the limitations upon the powers of Culver as agent, and in refusing to allow the jury to hear the evidence in support of the plea so stricken, which was heard by the court but not by the jury.

Ordinarily a principal is bound by acts of its agent, within apparent scope of the agent's authority. Fidelity & Casualty Co. of N. Y. v. Waugh, 222 Ky. 198, 300 S. W. 592; National Deposit Bank v. Ohio Oil Co., 250 Ky. 288, 62 S. W. (2d) 1048. Every one has the right to limit the power given an agent and of course insurance companies have the right to limit the authority of their agents, as we pointed out in Staples v. Continental Ins. Co., 223 Ky. 842, 5 S. W. (2d) 265. When an agent's authority is limited and third parties with knowledge of that limitation deal with such agent in excess of the agent's authority, the principal is not bound thereby. Kentucky-Pennsylvania Oil & Gas Corporation v. Clark, 247 Ky. 438, 57 S. W. (2d) 65.

A principal is never bound where a person dealing with his agent knows, or has reason to know, that the agent is exceeding his authority. Stewart Coal Co. v. L. & N. R. Co., 242 Ky. 382, 46 S. W. (2d) 495. This principle of Agency Law is well stated in 2 C. J. p. 569 sec. 210, but this court has itself stated the rule well in Galbraith's Adm'r v. Arlington Mutual Life Ins. Co., 75 Ky. (12 Bush) 29, where this was written:

> "It is a familiar rule of law that one dealing with an agent is bound, at his peril, to know the extent of the agent's authority, and that if an agent has special instructions, and those instructions are known to one dealing with him, the principal will not be bound by an act done in violation of such instructions; although if they had been unknown to the third person the act of the agent would have been binding upon the principal. This rule is based upon principles of justice and morality, and will not allow one dealing with an agent to say the thing

done was within the scope of his agency, and therefore the principal is bound, although such person knew at the time that the agent was violating instructions.''

Our statutes recognize the distinction pointed out in the Staples Case, and while section 762a-20, Ky. Stats., requires that all insurance in this Commonwealth shall be written or placed through a resident local agent, yet section 762a-20a, Ky. Stats., provides the act shall not apply to farm property.

Our statutes make further recognition of this distinction in section 762b-25 wherein there is made provision for rating bureaus and divisions of the expense of maintaining same among the members in proportion to the gross premiums received, ''Exclusive of premiums from insurance upon farm property which is not rated by schedule.''

The Insurance Company had set out at length that Culver was only a soliciting agent who had no blank policies in his possession, had no power to issue policies or make a contract such as was sued on, or power to make transfer of a policy or change of any kind in a contract or to transfer or assign or consent to the transfer or assignment of any policy of defendant, from the assured to whom the company had issued said policy, to any other person; and defendant states that in order to make any change in a policy of defendant, or to make such transfer or assignment of same, said agent was required to take an application for such transfer or assignment and to forward it to the head office of the company for acceptance and approval, and to have transmitted back the acceptance or approval of such change, transfer, or assignment by the company before same became effective, and that said agent's power was limited to such course of dealing and said agent had never been permitted by defendant to act in any other manner in connection with such matters and had never been held out to the public or the plaintiff as having any other power. Defendant states that said agent had no power to accept, as premium on any of defendant's policies, anything except cash or the executed note of the applicant or assured, and had no power to waive payment in such manner. It had charged as stated above that Eblen knew of these limitations and Eblen did not deny it. The court erred in striking this from the answer and

in refusing to allow the jury to hear the evidence in support of it.

Eblen's contention in this case is that Culver proposed to give him this insurance from the time of their conversation in Henderson to June 1, 1936. (We wonder if he had read section 762a-19, Ky. Stats., before he testified.)

However, Eblen did not then choose to accept the gift, and when he did accept it, as he claims, Culver imposed a condition. He demanded that Eblen execute this application for transfer and this note.

Both delivery and acceptance are necessary to constitute a gift, and at any time before acceptance the donor may revoke the gift or impose conditions. 28 C. J. p. 650 sec. 46.

When Culver told Eblen to sign these papers and return them Eblen had that to do if he wanted this insurance.

Eblen then had the right to elect whether he would accept those conditions. The fire occurred before he made his election.

Judgment reversed for a new trial.